**David E. MARCUS, Appellant,**

v.

**Margaret A. SMITH, Appellee.**

**In re David E. Marcus, Relator.**

**Nos. 01–09–00321–CV, 01–09–00461–CV, 01–09–00702–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 17, 2009.

Richard Bernard Farrer, Yetter, Warden & Coleman, L.L.P., Austin, TX, for Appellant.

Earle S. Lilly, Zooey Wharton, Lilly, Newman & Van Ness, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

In this appeal and these petitions for writs of mandamus, David E. Marcus seeks relief from the trial court's March 3, 2009 order dismissing his lawsuit and imposing trial attorney's fees, and from the trial court's April 16, 2009 temporary orders imposing appellate attorney's fees and quashing exhibits.[1] In three issues raised in the appeal, Marcus contends the trial court erred by (1) awarding trial attorney's fees to Smith's attorney; (2) awarding appellate attorney's fees to Smith's attorney; and (3) disallowing Marcus's resubmission of trial exhibits after he had taken them back into his possession and withdrawn them from the court. The petition for mandamus in appellate number 01–09–00461–CV asserts the same challenges raised in the appeal concerning the award of appellate attorney's fees. In three issues pertaining to the petition for mandamus in appellate number 01–09–00702–CV, Marcus repeats his complaint about the trial court's refusal to allow him to resubmit trial exhibits, but he additionally asserts the trial court erred by denying his motion to enforce his visitation rights, and by directing him to pay fees for Smith's trial attorney. Smith responds by challenging our jurisdiction over these cases and, alternatively, addressing the merits of the contentions. We conclude the trial court did not abuse its discretion by dismissing the motion to enforce the order adjudicating parentage and by awarding trial and appellate attorney's

---

1. The appeal is cause number 01–09–00321–CV. The petitions for writs of mandamus are cause numbers 01–09–00461–CV and 01–09–00702–CV. The underlying case is *In The* *Interest Of D.S.M., A Minor Child,* cause number 2004–45005, in the 310th Judicial District Court of Harris County, Texas, the Hon. Lisa Millard, presiding.

fees. We affirm the trial court's March 3, 2009 dismissal order, modify the trial court's April 16, 2009 temporary orders to make the appellate attorney's fees contingent upon successful appeal, and deny the petitions for writs of mandamus.

## Background

Marcus, appellant and relator, and Margaret Smith, appellee and real party in interest, are joint managing conservators of their son. According to the order adjudicating parentage, Marcus "shall have the right to possession of the child for the first two days of Hanukkah," and Smith "shall have the right to possession of the child beginning at noon on December 24 and ending at noon on December 26." After the order adjudicating parentage was signed, Marcus desired to spend Christmas with his son, and he and Smith began negotiating a "swap" of holidays. Specifically, Marcus made an offer to Smith that she could have their son on the first two days of Hanukkah if he could have their son every other Christmas.

Smith decided to take their son to Mexico, and sought Marcus's consent. Smith sent Marcus an email that stated, "In no way will it effect [sic] your visitation time with [D.M.].... I'll probably have him back earlier than 5:00 on the 23rd." In 2008, however, the first two days of Hanukkah occurred on December 21 and 22, so Smith's assurance that Marcus's visitation with his son would not be affected was inaccurate.

On November 20, 2008, Marcus gave his approval for his son to travel to Mexico with Smith. The letter stated,

> I hereby give written authorization to allow [D.M.] to travel, with you, beyond the territorial limits of the United States. Also, enclosed is the signed and notarized Statement of Consent for the Issuance of [D.M.'s] (minor) passport.

> Hope y'all have lots a fun in Mexico. I may do the same—and take him overseas—this summer. He'll be a little world traveler in no time.

About three weeks after Marcus gave his consent for his son to travel with Smith, Smith sent an email explaining to Marcus she had miscalculated the days their son would be away and asking for Marcus's consent to keep their son on December 21 and 22. On December 11, 2008, Smith emailed Marcus, as follows:

> I'm afraid I have made an oversight that you had days (21st and 22nd of Dec.) when I booked our trip to Mexico. When I got your letter approving the passport application and saying have a good time, I assumed that if there was any conflict with me taking [D.M.] over the holiday, (and you saying have a great time in your letter), you would have immediately brought that to my attention. I'm not sure if that was an oversight on your part, but it definitely was on mine. We have non-refundable tickets and non-refundable hotel.... I have a lot of activities planned for the kids, and I'm sure it will be a great experience for them. In the past, you have on at least two occasions asked me for [D.M.] a day early or late for scheduling trips to Florida.... So can we swap those days?

Marcus said he would agree to allow Smith to have their son on December 21 and 22 if she agreed to alternate possession of their son on future Christmases.

When Smith did not agree to alternating possession of their son on future Christmases, Marcus stated,

> I know you didn't realize it.... I hear-ya, it was a simple mistake. It's fine. I understand. The condition under which you can have him on the 21–22 is that we swap alternating Christmases. I

guess you've made your decision: you don't want it badly enough to swap.

Smith did not agree to switch future Christmases but did counteroffer that they "switch for Monday and another day of your choice." A long exchange of emails followed consisting of offers and counteroffers. The email exchange does not indicate whether Marcus and Smith reached an agreement. Marcus took Dylan to Mexico, and the trip included the first two days of Hanukkah, December 21–22, 2008.

In January 2009, Marcus moved to enforce the order adjudicating parentage by asking the court to hold Smith in contempt for denying him visitation rights for the first two days of Hanukkah. Smith answered, counterclaimed for sanctions, and moved to dismiss the suit. At the hearing on the motion to dismiss, Marcus acknowledged he gave Smith permission to take their child to Mexico. The record shows, as follows:

[Counsel for Smith]: [T]he letter you wrote on November 20, you told her to have a great time in Mexico, didn't you? Didn't you?

[Marcus]: Yes.

. . . .

[Counsel for Smith]: Did you not send her a piece of paper telling her to sign the modification decree and she could forget about worrying about the two days?

[Marcus]: No. I offered a trade.

[Counsel for Smith]: You told her, sir, if you can remember without looking at anything, "I want to give you what you want and I want Dylan to have this Mexico trip." Those words, remember those?

[Marcus]: Those are my words.

. . . .

[Counsel for Smith]: You were more than willing, you more than willing in

your heart to give Margaret, the mother of y'all's child . . . the 21st and the 22nd, your Hanukkah, correct? You were willing to give her that, correct?

[Marcus]: To accommodate, absolutely.

[Counsel for Smith]: All right. As well as the 26th, and the 27th, and the 28th of this year, correct—last year?

[Marcus]: Yes.

[Counsel for Smith]: All right. But you said, sir, you will have to switch the Christmas holiday schedule for the following years, correct?

[Marcus]: Trade for trade, correct.

[Counsel for Smith]: Sir, I didn't ask you about trade for trade. That was you telling her?

[Marcus]: Correct.

. . . .

[Counsel for Smith]: But on December 13th, December 13th, again days before she was to have left with the passport in hand or before—

[Marcus]: Yes, sir.

[Counsel for Smith]: —your letter to her, "I know you didn't realize it until the December 1st e-mail." "It," I assume, being your two days, correct?

[Marcus]: Well, what does the rest say?

[Counsel for Smith]: It says, "I hear you. It was simple mistake. It's fine. I understand." You were talking about the two days, weren't you?

[Marcus]: Absolutely. Trying to accommodate.

During the hearing on the motion to dismiss, counsel for Smith questioned Marcus concerning his belief whether Smith intentionally violated the trial court's custody order. The record shows the following:

[Counsel for Smith]: When you told this Court and when you wrote her and you said, "Yeah, I understand; it's a

mistake," you thought that that didn't mean anything as far as contempt? She was still in contempt even if she made a mistake, correct?

[Marcus]: No.

[Counsel for Smith]: All right. Because you know that contempt of court is an intentional act, an intentional conduct or intentional act, right?

[Marcus]: I see, yes.

[Counsel for Smith]: Right?

[Marcus]: Absolutely.

The trial court dismissed the suit and awarded Smith $10,000 in attorney's fees on March 3, 2009. The "Dismissal Order" states, in pertinent part,

> It is further ordered that Margaret Smith's claim for relief is granted, and hereby awards Judgment against David E. Marcus, in favor of Earle S. Lilly, for the sum of $10,000.00 towards Margaret Smith's attorney's fees, with interest at 10% per year compounded annually from the date this Order is signed until paid. The judgment, for which let execution issue, is awarded against David E. Marcus, and David E. Marcus is Ordered to pay the attorney's fees to Earle S. Lilly . . . on or before March 23, 2009, at 4:00 p.m.

Just before the hearing concluded, the trial court asked if the parties would like to withdraw their exhibits and the parties replied that they would.

On March 24, three weeks after the trial, Marcus resubmitted the trial exhibits he had withdrawn, and Smith moved to quash them. Specifically, Smith contended that the parties had withdrawn the exhibits by agreement, and that the trial court should not readmit them after removal from its custody.

The trial court denied Marcus's motion to resubmit the trial exhibits and granted the motion to quash. The court explained its ruling as follows:

> [T]he Court will allow you to submit the exhibits that you believe are correct and give it to the court reporter. However, the court reporter will have to state that those are not exhibits that were admitted since they were withdrawn, but you are—you can present to the Court as if they were exhibits that were not presented and they can consider that if they wish.

Marcus filed a notice of appeal on March 25, 2009, and Smith requested an award of appellate attorney's fees.

On April 16, 2009, the trial court granted Smith appellate attorney's fees in the following order:

> [T]he Court has jurisdiction over the parties and subject matter under Texas Family Code § 109.001(b).
>
> It is ordered the Court takes judicial notice of the attorney fee testimony by Lilly as well as his argument for attorney fees under Texas Family Code § 109.001(a)(5). It is further ordered that Margaret Smith's request for appellate attorney fees is granted, and orders David E. Marcus to pay to Earle S. Lilly the sum of $10,000.00 on or before April 23, 2009. If not timely paid, the Court further awards Judgment, against David E. Marcus and in favor of Earle S. Lilly, in the sum of $10,000.00 for Margaret Smith's appellate attorney fees.

### The Appeal

#### A. Jurisdiction Over Entire Appeal

■ Smith has moved to dismiss Marcus's appeal. Smith contends an appellate court has no jurisdiction over an appeal from a trial court's denial of a motion to hold a party in contempt because the order that fails to find a party in contempt is not a final, appealable judgment. Smith as-

serts all of Marcus's issues in the appeal "stem from Judge Millard's decision not to hold Margaret in contempt for two days of visitation." Marcus responds that "orders refusing to hold a party in contempt that fully and finally dispose of all parties and issues in the case should be appealable, in circumstances such as these, as would any other final order." Marcus also asserts that we have jurisdiction over the final, appealable order directing Marcus to pay a money judgment.

■■ The court of appeals has jurisdiction to hear an appeal when the "issues on appeal do not assert that the trial court erred in refusing to hold [appellee] in contempt of court." *See In re W.J.B.*, 294 S.W.3d 873, 878 (Tex.App.-Beaumont 2009, no pet. h.) (holding that appellate court has jurisdiction over portion of judgment when portion concerns order directing party to pay money judgment and does not assert trial court erred by refusing to hold party in contempt). For example, although an order concerns denial of contempt, the appellate court has jurisdiction over issues concerning "that portion of [a] trial court's order denying [a] request that the trial court confirm and then reduce the alleged child support arrearage to judgment." *Id.* "Decisions in contempt proceedings cannot be reviewed on appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable." *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex.App.-Fort Worth 2001, pet. denied). Contempt proceedings are not appealable because they "are not concerned with disposing of all claims and parties before the court, as are judgments; instead, contempt proceedings involve a court's enforcement of its own orders, regardless of the status of the claims between the parties before it." *In re Office of Atty. Gen. of Texas*, 215 S.W.3d 913,

915–16 (Tex.App.-Fort Worth 2007, orig. proceeding).

Here, Marcus appeals three issues—the award of trial court fees, the award of appellate fees, and the order quashing his resubmission of trial exhibits. Although these issues may stem from the contempt action in that they result from its filing and resolution, Marcus does not challenge the trial court's refusal to hold Smith in contempt of court. We have no jurisdiction to address the trial court's refusal to find Smith in contempt of court, and Marcus is not asking that we address that matter. *See In re W.J.B.*, 294 S.W.3d at 878; *In re Office of Atty. Gen. of Texas*, 215 S.W.3d at 916. Instead, Marcus's appeal concerns the award for trial and appellate attorney's fees, and the quashing of the trial exhibits, which are matters other than the merits concerning the trial court's decision not to hold Smith in contempt. We hold we have jurisdiction over the matters concerning trial attorney's fees and the quashing of the trial exhibits. We conclude, however, that we lack jurisdiction to address the appellate attorney's fees in the direct appeal for reasons we explain in the next section.

**B. Appellate Attorney's Fees**

■■ In his second issue in the appeal, Marcus asserts the trial court abused its discretion by awarding appellate attorney's fees because the order does not comply with Texas Family Code section 109.001 and is not conditioned on a successful appeal.

Smith contends we lack jurisdiction over the temporary orders because Marcus is attempting to appeal a temporary order timely entered during the pendency of an appeal, which is barred under section 109.001(c) of the Texas Family Code. Marcus responds that section 109.001(c) does not apply because this appeal is not interlocutory and is a final order in that it fully

and finally awards all appellate attorney's fees to Smith, payable immediately. Specifically, Marcus asserts the April 16, 2009 order awarding appellate attorney's fees cannot be interlocutory because interlocutory appeals must occur before the final judgment, and the April 16, 2009 order was the final judgment.[2]

■ Section 109.001 of the Texas Family Code provides:

(a) Not later than the 30th day after the date an appeal is perfected, on the motion of any party or on the court's own motion and after notice and hearing, the court may make any order necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal as the court may deem necessary and equitable. In addition to other matters, an order may:

. . . .

(5) require payment of reasonable attorney's fees and expenses;

. . . .

(b) A court retains jurisdiction to enforce its orders rendered under this section unless the appellate court, on a proper showing, supersedes the court's order.

(c) A temporary order rendered under this section is not subject to interlocutory appeal.

TEX. FAM.CODE § 109.001. Section 109.001 gives the trial court discretionary authority to render temporary orders to protect the welfare of the child during the pendency of an appeal, including ordering the payment of reasonable attorney's fees and expenses, as necessary to protect the welfare of children during the pendency of an appeal. *See Id.* § 109.001(a)(5). "A tem-

porary order under section 109.001 is only appropriate if a final judgment has been signed and a notice of appeal has been filed." *In re K.M.,* No. 2–04–00044–CV, 2004 WL 2569384, at *8 (Tex.App.-Fort Worth Nov. 12, 2004, pet. denied).

■ "The provision in section 109.001(c) prohibiting an interlocutory appeal has been construed to mean that an appellate court lacks jurisdiction, in the pending appeal, over a complaint about the denial of a temporary order rendered during the appeal." *In re Merriam,* 228 S.W.3d 413, 415 (Tex.App.-Beaumont 2007, no pet.). Mandamus is the appropriate remedy to attack a temporary order under section 109.001. *See Johnson v. Johnson,* 948 S.W.2d 835, 838 (Tex.App.-San Antonio 1997, pet. denied); *see also In re Gonzalez,* 993 S.W.2d 147, 162 (Tex.App.-San Antonio 1999, pet. denied).

Here, the March 3, 2009 order dismissing the lawsuit disposed of all parties and claims in the lawsuit, and notice of appeal for that dismissal had been filed. The order signed April 16, 2009 is titled "temporary orders" and specifically references Texas Family Code section 109.001. We hold we lack jurisdiction over Marcus's direct appeal concerning the award of appellate attorney's fees awarded in the temporary order under section 109.001. *See In re Gonzalez,* 993 S.W.2d at 162; *Johnson,* 948 S.W.2d at 838.

**C. Trial Court Attorney's Fees**

■ In his first issue in the appeal, Marcus contends the trial court erred by ordering him to pay $10,000 in trial attorney's fees. Specifically, he asserts that the award of attorney's fees did not comply with the Texas Family Code because

---

**2.** In other sections of his brief, Marcus asserts that the March 3, 2009 order dismissing the

lawsuit was the final judgment.

there was no evidence that the award of fees were in the best interest of the child. Smith responds that Marcus has waived appellate consideration of trial court attorney's fees because Marcus failed to preserve the complaint on appeal by neglecting to make a timely objection before the trial court.

■ "In order to preserve certain complaints regarding an award of attorney's fees, a party must make a timely and sufficiently specific objection to such an award in the trial court." *Henry v. Henry,* 48 S.W.3d 468, 481 (Tex.App.-Houston [14th Dist.] 2001) (citing TEX.R.APP. P. 33.1; *Massey v. Massey,* 807 S.W.2d 391, 403 (Tex.App.-Houston [1st Dist.] 1991, writ denied)) (issue regarding attorney's fees could not be raised for first time on appeal); *Villasenor v. Villasenor,* 911 S.W.2d 411, 420 (Tex.App.-San Antonio 1995, no writ) (party failed to object to award of fees in open court or in motion for new trial).

A review of the record shows that Marcus made no objection. We hold Marcus has waived the argument that the trial court erred by granting Smith her trial court attorney's fees. *See Henry,* 48 S.W.3d at 481.

### D. Resubmission of Trial Exhibits

■ In his third issue in the appeal, Marcus asserts that he removed his trial exhibits from the custody of the court after being prompted by the trial court, and, therefore, the trial court abused its discretion by denying the readmittance of his exhibits after their removal. Specifically, prior to the conclusion of the motion to dismiss hearing, the trial court asked, "Do y'all want to withdraw your exhibits?" Both parties replied that they did, and withdrew their exhibits. Marcus contends that by refusing to readmit his exhibits, the trial court prevented him from properly presenting his case to the court of appeals, a subject that is proper for appeal. *See* TEX.R.APP. P. 44.1(a).

The contested exhibits are included in the reporter's record and within the appendices of numerous pleadings within the record, and we relied upon the contested exhibits when formulating our opinion. The trial court, therefore, did not prevent Marcus from presenting his case for appeal. *See id.*

### The Petitions for Mandamus

### A. Applicable Law

■ Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). Clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding)). The reviewing court may not substitute its judgment for that of the trial court when reviewing factual issues. *Id.* at 839–40. "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.* at 840. "[A]n appellate court may not deal with disputed areas of fact in an original mandamus proceeding." *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990). Specifically, "[i]f the record contains legally sufficient evidence both against and in support of the trial court's decision then mandamus will not lie because weighing conflicting evidence is a trial court function." *In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670, 686 (Tex.2007, orig. proceeding).

### B. Appellate Attorney's Fees

In his sole issue in the petition for mandamus in appellate number 01–09–00461–CV, Marcus contends the trial court erred by awarding appellate fees to Smith. Marcus contends Smith failed to offer sufficient evidence that the award is necessary to preserve and protect the safety and welfare of the child, as required under section 109.001. *See* TEX. FAM.CODE § 109.001(a)(5). Marcus also contends the court erred by making the award immediately payable rather than contingent on Smith's success in the court of appeals.

As we note earlier in this opinion, mandamus is the appropriate means to challenge temporary orders entered under section 109.001. TEX. FAM.CODE § 109.001(c); *In re Gonzalez*, 993 S.W.2d at 162. Also as noted earlier in this opinion, section 109.001 authorizes the trial court to render temporary orders requiring payment of reasonable attorney's fees and expenses, as "necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal as the court may deem necessary and equitable." TEX. FAM. CODE § 109.001(a); *Love v. Bailey–Love*, 217 S.W.3d 33, 37 n. 1 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

Evidence is sufficient to justify appellate attorney's fees to preserve and protect the safety and welfare of the child under section 109.001 when the recipient of appellate attorney's fees "has primary responsibility of the children and for the care and upkeep of and the debt on the children's principal home." *In re Garza*, 153 S.W.3d 97, 101 (Tex.App.-San Antonio 2004, orig. proceeding). Smith introduced evidence that she incurred approximately $22,000 in attorney's fees in the underlying suit, and that she would incur at least $10,000 to defend an appeal. Smith has primary responsibility for the child and for the child's principal home. Moreover, the record shows that Smith has a "lack of funds" and "still owes [her attorney] money." Because Smith provided evidence to the trial court to receive appellate attorney fees to preserve and protect the safety and welfare of her child, we must defer to the trial court's decision to award the fees. *See id.; see also In re J.L.*, 163 S.W.3d 79, 85 (Tex.2005).

We deny the petition for writ of mandamus because the record does not show the trial court acted arbitrarily or unreasonably by determining that Smith's award of appellate attorney fees during the pendency of the appeal would help preserve the welfare of the child. An unconditional award of appellant's appellate attorney's fees is improper, and a trial court must condition the award upon the appellant's unsuccessful appeal. *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *In re Garza*, 153 S.W.3d at 101 ("The trial court is expressly authorized to award appellate attorney's fees when it is necessary and equitable to protect the welfare of the children.... [W]e hold the trial court could reasonably conclude that it would be equitable to order Stephanie to pay Xavier's appellate attorney's fees in the event her appeal is unsuccessful. And, because the award of appellate attorney's fees is contingent on Stephanie being unsuccessful in her appeal, the award does not 'penalize [Stephanie] for taking a successful appeal.' "). However, an unconditional award of appellate attorney's fees does not require reversal; instead, the appellate court may modify the trial court's judgment to make the attorney's fees contingent upon successful appeal. *Keith*, 221 S.W.3d at 171. Although the trial court should have conditioned its order on success before the appellate court, its failure to do so does not require reversal. *See id.* We modify the trial court's order to make

the appellate attorney's fees contingent upon successful appeal. *See id.*

### C. Denial of Motion to Enforce Visitation

 In his first issue in the petition for mandamus in appellate cause number 01–09–00702–CV, Marcus contends the trial court improperly denied his motion to enforce his visitation rights. Marcus asserts the trial court abused its discretion by dismissing his motion to enforce the order adjudicating parentage because Smith violated the order adjudicating parentage by failing to relinquish their son for Hanukkah visitation with Marcus.

 "Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus." *In re Long,* 984 S.W.2d 623, 625 (Tex.1999). A relator may seek mandamus relief for a trial court's finding that a party is not in contempt. *See, e.g., Rowe v. Moore,* 756 S.W.2d 117, 119 (Tex.App.-Houston [1st Dist.] 1988, orig. proceeding).

Here, the record shows a dispute over whether Marcus and Smith agreed to modify the order adjudicating parentage allowing Smith to possess their son for the first two days of Hanukkah in 2008. *See Brady,* 795 S.W.2d at 714; *In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670, 686. The record also shows a dispute over whether Smith's violation of the order adjudicating parentage was unintentional. *See id.* We deny the petition for mandamus because the record does not show the trial court acted arbitrarily or unreasonably. *See Walker,* 827 S.W.2d at 839.

### D. Trial Attorney's Fees

In his second issue in the petition for mandamus in appellate number 01–09–00702–CV, Marcus contends the trial court erroneously ordered him to pay trial attorney's fees. We have already addressed that issue in the direct appeal. Because Marcus had an adequate remedy by appeal, mandamus relief is unavailable to Marcus. *See id.*

### E. Exhibits

In his third issue in the petition for mandamus in 01–09–00702–CV, Marcus asserts the trial court erred by refusing to permit him to resubmit his trial exhibits. We have already addressed this issue in the direct appeal. Because Marcus had an adequate remedy by appeal, mandamus relief is unavailable to Marcus. *See id.*

### Conclusion

We affirm the trial court's judgment, modify the trial court's April 16, 2009 order to make the appellate attorney's fees contingent upon successful appeal, and deny the petitions for writs of mandamus. All outstanding motions are overruled as moot.