**Opinion issued December 23, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00364-CV

_____

## IN THE MATTER OF R. S.

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-00568J**

---

## MEMORANDUM OPINION

In April 2022, the State of Texas filed an original petition alleging that the then sixteen-year-old Appellant had engaged in delinquent conduct by murdering his grandmother.[1]  One year later, in June 2023, the State filed a determinate petition alleging the same delinquent conduct by Appellant, who by then was

---

[1]  To protect the identity of the minor child, we refer to him by a pseudonym.  *See* TEX. R. APP. P. 9.8(c)(2).

eighteen. Appellant filed a motion to dismiss the determinate petition for lack of jurisdiction arguing the juvenile trial court lost jurisdiction over him on his eighteenth birthday, and the State had not exercised diligence in completing its prosecution. Following a hearing, the trial court denied the motion.

In two issues, Appellant argues the trial court erred in denying his motion to dismiss because (1) the juvenile trial court lost jurisdiction over him when he turned eighteen absent a showing of due diligence to complete the proceedings by the State, and (2) the State failed to establish it exercised due diligence.

We affirm.

## Background

Delia Arriega was stabbed to death on February 23, 2022. A few days later, her sixteen-year-old grandson, R.S., was taken into custody and sent to the Harris County Juvenile Detention Center. R.S. was diagnosed with unspecified schizophrenia spectrum and other psychotic disorder; unknown substance induced psychotic disorder; unspecified disruptive, impulse control, and conduct disorder; cannabis use disorder; and alcohol use disorder.

On April 6, 2022, the State filed an original petition alleging that sixteen-year-old R.S. had engaged in "delinquent conduct" by "unlawfully, intentionally, and knowingly caus[ing] the death of Delia Arriega . . . by stabbing [her] with a knife." One week later, on April 12, 2022, the trial court ordered R.S. to be

evaluated by the Harris County Juvenile Forensic Unit ("HCJFU") to determine his fitness to proceed.

The HCJFU examiner met with R.S. on several occasions in April and May of 2022, and concluded that without psychiatric treatment, it was likely R.S. would develop a "primary psychotic illness, such as schizophrenia." The examiner diagnosed R.S. with unspecified schizophrenia spectrum and other psychotic disorder; unspecified disruptive, impulse-control, and conduct disorder; and cannabis use disorder, in partial remission due to a controlled environment. In June 2022, the examiner concluded that R.S. was "not fit to proceed in any legal proceedings . . . at this point in time." The HCJFU report was filed with the juvenile court on August 17, 2022.

On August 17, 2022, and again on September 26, 2022, the trial court found R.S. "unfit to proceed as a result of mental illness" and ordered him placed with the Texas Department of State Health Services for fitness restoration.

The HCJFU examiner evaluated R.S. again on January 4, 2023, concluding that R.S. likely did not meet the criteria for diagnosis of an intellectual development disorder, further supporting the clinical opinion that his "lack of fitness to proceed [was] due to a mental illness (unspecified schizophrenia spectrum and other psychotic disorder)." He opined that R.S. was "still in need of fitness restoration commitment due to a mental illness." On January 19, 2023, the

State requested that a fit-to-proceed evaluation be completed and, should R.S. be found fit to proceed, that a lack-of-responsibility evaluation[2] also be completed.

In January 2023, the trial court again ordered that R.S. be evaluated by the HCJFU to determine his fitness to proceed. On February 16, 2023, the HCJFU examiner conducted another evaluation of R.S. and concluded he was fit to proceed. The examiner notified the parties that R.S. was fit to proceed via email on February 22, 2023, stating a report was being generated and would "be forwarded upon completion."[3] The next day, the State responded by inquiring whether the department would now be conducting a "sanity evaluation." R.S.'s counsel immediately responded that he would investigate the "lack of responsibility" issue with a private expert, but that should the trial court order an "LOR evaluation at the request of the prosecutor, [he] would instruct [his] client not to answer any questions" based on Fifth Amendment concerns.[4]

On February 23, 2023, R.S. was transported to the North Texas State Hospital, after having been housed in the Harris County Psychiatric Unit for

---

[2] During a hearing on R.S.'s Motion to Dismiss, discussed below, the State likened the "lack of responsibility" determination to one for "'sanity' in the adult system."

[3] The report was completed on March 1, 2023, and it was provided to the parties via email on May 2, 2023.

[4] R.S.'s counsel advised that if a court order was signed for a lack of responsibility evaluation at the request of the State, he would instruct R.S. not to answer any questions due to his "right to remain silent and not to be a witness against himself."

approximately 264 days. On March 16, 2023, doctors at the State Hospital conducted an evaluation of R.S., and in a report dated March 28, 2023, they concluded that R.S. was fit to proceed. The parties were notified of the finding on April 5, 2023. And on April 17, 2023, the State Hospital's evaluation was filed with the juvenile court.

On April 13, 2023, R.S. was returned to the Harris County Juvenile Detention Center. Six days later, on April 19, 2023, R.S.'s counsel filed a motion requesting that a private therapist be permitted to conduct an independent evaluation of R.S. at the Harris County Juvenile Detention Center. The trial court granted the motion on April 19, 2023, and R.S.'s counsel informed the prosecutor that the private evaluation "should be completed sometime before the end of May."

On May 3, 2023, R.S.'s counsel requested a reset of the trial setting to June 12, 2023—eleven days after his eighteenth birthday—to conduct "[d]efense investigation." R.S. turned eighteen on June 1, 2023, and on June 14, 2023, R.S.'s attorney told the State that R.S. would not assert a lack-of-responsibility defense "at this time." That same day (a Wednesday), the State emailed the grand jury division secretary requesting to be placed on the grand jury agenda that Friday for

5

approval and certification of a determinate petition.  The earliest available date to present to the grand jury was June 20, 2023.[5]

On June 20, 2023, the case was presented to the grand jury, who approved the State's determinate petition.  The next day, on June 21, 2023, the State filed the determinate petition[6] in the juvenile trial court alleging that R.S. had engaged in "delinquent conduct" by "unlawfully, intentionally, and knowingly caus[ing] the death of Delia Arriega . . . by stabbing [her] with a knife" on February 23, 2022.

---

[5] On June 17, 2023, prior to filing the determinate petition, the prosecutor extended a plea-bargain offer to R.S of twenty-five years' confinement in the Texas Juvenile Justice Department.  R.S. rejected the offer.

[6] The determinate sentence system was created by the Texas Legislature to prosecute juvenile offenders for certain violent offenses.  *In re X.A.*, No. 01-19-00227-CV, 2020 WL 237939, at *1 n.2 (Tex. App.—Houston [1st Dist.] Jan. 16, 2020, no pet.) (mem. op.) (citing *In re J.G.*, 905 S.W.2d 676, 679 (Tex. App.—Texarkana 1995, writ denied); *see also In re R.C.*, 626 S.W.3d 76, 78 n.1 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("For delinquent conduct involving certain offenses . . . that remain in the juvenile court, the State has the option of filing a determinate petition and seeking a determinate sentence—one that has a maximum term of years depending on the offense's severity.").

As we explained in *In re X.A.*:

> To invoke this system, the prosecutor must obtain grand jury approval of a juvenile court [determinate] petition charging one of the covered offenses. If the petition is approved and certified to the juvenile court, the case proceeds to adjudication and disposition. If the juvenile is found guilty of a specified violent offense, the trial court may commit him or her to the Texas Juvenile Justice Department and may later transfer the juvenile to the Institutional Division of the Texas Department of Criminal Justice.

2020 WL 237939, at *1 n.2 (internal citations omitted) (internal quotation marks omitted).   To complete the determinate sentence, "a juvenile may be held past his 19th birthday, when otherwise the Texas Juvenile Justice Department would 'discharge [the juvenile] from its custody' at that time." *In re R.C.*, 626 S.W.3d at 78 n.1.

6

On the same day it filed the determinate petition, the State requested a hearing for the court to assess "due diligence." The hearing was scheduled for June 26, 2023.

**Motion to Dismiss**

R.S. filed a Motion to Dismiss for Lack of Jurisdiction arguing the State had not exercised due diligence in attempting to complete the proceeding before R.S. turned eighteen.[7] R.S. argued, among other things, that having initially been found "not fit to proceed in any legal proceedings of which he [was] a subject," he was found "fit to proceed" on February 22, 2023, and he was taken to the State Hospital the following day. On April 5, 2023, the parties were advised that the State Hospital had found R.S. "competent" and he would be returned to the Juvenile Detention Center the following week. The State Hospital's fitness report was filed with the trial court on April 17, 2023.

Notwithstanding, R.S. argued the State had made no effort to adjudicate R.S. before June 1, 2023—the day he turned eighteen. R.S. argued that the State did not extend a plea-bargain offer to R.S. until sixteen days after his eighteenth birthday, did not present a determinate petition to the grand jury until June 20, 2023, and did not file the determinate petition until June 21, 2023—nearly three weeks after R.S. turned eighteen. R.S. argued there was "no legal impediment" to the State presenting a determinate petition to the grand jury before R.S. turned eighteen.

---

[7] The record does not indicate the State filed a response to the Motion to Dismiss.

During the hearing on the Motion to Dismiss, R.S. again argued that the State had not been diligent in getting the case "finished and adjudicated before [R.S.'s] 18th birthday." He argued there was "every opportunity" to get the determinate petition filed from early 2022 until June 1, 2023, when R.S. turned eighteen, and the State had failed to do so.

The State responded it had exercised due diligence because it had been moving the case forward and had not dragged its feet. The State noted that the original petition was filed in April 2022, less than two months after the murder was committed. After the State was advised by the juvenile probation department that R.S. was unfit to proceed in June 2022, R.S. was committed to the State Hospital, where he remained for the next 264 days, until there was a finding that he was fit to proceed. The State did not obtain an official report designating R.S. as fit to proceed until April 2023, at which time he was transported back to the Harris County Juvenile Detention Center. The State argued that in April 2023, the defense filed a motion to have R.S. evaluated by a private therapist with respect to "the lack of responsibility issue," and it was not until June 14, 2023, that R.S.'s counsel informed the State R.S. would not assert a lack-of-responsibility defense. Three days later, the State made a plea offer, and three days after that, the State went to the grand jury seeking to file a determinate position. Immediately after, the State requested a due diligence finding. The State argued, "Once we had all of

8

the information regarding the long history of mental health issues that were occurring with [R.S.], we did all of the things that we were waiting to do once we had that information." The State also clarified that whether R.S. was "sane or could assert a lack of responsibility defense" was relevant in that it could result in further investigation of the defense and impact the State's decision to seek a determinate petition or make a plea offer.

The State also argued that it did not need to prove due diligence in any event, because the juvenile court had jurisdiction over R.S. until he turned nineteen. R.S. disagreed, arguing that the "extended period of time to nineteen addresses disposition . . . [b]ut [the State still has] to be diligent about getting that adjudication before the 18th birthday." The State argued that even if the Court did not agree it had jurisdiction over R.S. until he turned nineteen, the State established it had "exercised due diligence in this case." The State concluded:

> Here, the case has been pending for a total of 446 days. Of that, over 260 of those days, [R.S.] was not fit to proceed. We couldn't move to an adjudication even if we wanted to. In addition to that, over 100 days, we were waiting for things like the lack of responsibility. Even if we give every sort of benefit of the doubt here at most, 120 days are attributable to the State. 120 days on a murder charge. A murder charge with obviously complex issues. A murder charge where three days after we were given the information, we make the offer. Three days after that, we seek the determinate [petition]. It is certainly not astounding that it would take 120 days to try to resolve the case.
> The court denied the Motion to Dismiss and entered a finding that the State

had established "due diligence on the case."

9

## Judgment

On April 24, 2024, R.S. entered a plea of "true" to the allegation in the determinate petition and the juvenile court sentenced him to a determinate sentence of twenty years' confinement. On May 15, 2024, the juvenile court signed an order transferring R.S. to the Texas Department of Criminal Justice.

This appeal ensued.

## Standard of Review and Applicable Law

Juvenile courts have "exclusive, original jurisdiction over all proceedings involving a person who has engaged in delinquent conduct as a result of acts committed before age seventeen." *In re B.R.H.*, 426 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2012) (orig. proceeding) (citing TEX. FAM. CODE §§ 51.02, 51.04). When a juvenile turns eighteen, the juvenile court does not lose jurisdiction over the juvenile but its jurisdiction "becomes limited." *Id.* "The juvenile court retains limited jurisdiction to either transfer the case to an appropriate court or dismiss the case." *Id.* (citing *In re N.J.A.*, 997 S.W.3d 554, 556 (Tex. 1999)). Section 51.0412 of the Family Code, which applies to incomplete proceedings, provides an exception to this rule. It provides:

> The court retains jurisdiction over a person, without regard to the age of the person, who is a respondent in an adjudication proceeding, a disposition proceeding, a proceeding to modify disposition, a proceeding for waiver of jurisdiction and transfer to criminal court under Section 54.02(a), or a motion for transfer of determinate sentence probation to an appropriate district court if:

(1)    the petition or motion was filed while the respondent was younger than 18 or 19 years of age, as applicable;

(2)    the proceeding is not complete before the respondent becomes 18 or 19 years of age, as applicable; and

(3)    the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent became 18 or 19 years of age, as applicable.

TEX. FAM. CODE § 51.0412. Thus, under Section 51.0412, a "juvenile court may bind the juvenile defendant if his case began in the court prior to the juvenile turning eighteen or nineteen years old, if it is pending when he turns eighteen or nineteen, and if the State exercised due diligence in attempting to complete the proceeding before the juvenile's eighteenth or nineteenth birthday." *In re N.G.W.*, 648 S.W.3d 490, 492 (Tex. App.—San Antonio 2021, no pet.) (citing TEX. FAM. CODE § 51.0412).

The question of diligence is one of fact, which the trial court determines based on the circumstances of each case. *In re B.R.H.*, 426 S.W.3d at 168 (citing *In re J.C.C.*, 952 S.W.2d 47, 49–50 (Tex. App.—San Antonio 1997, no pet.)); *In re H.S.M.*, No. 04-21-00262-CV, 2024 WL 2732319, at *2 (Tex. App.—San Antonio May 29, 2024, pet. denied) (mem. op.). "When reviewing factual issues, we defer to the trial court's findings unless the record contains no evidence to support them." *In re B.R.H.*, 426 S.W.3d at 168 (citing *Marcus v. Smith*, 313 S.W.3d 408,

11

417 (Tex. App.—Houston [1st Dist.] 2009, no pet.)). We apply an abuse of discretion standard in our review. "Even if we would have decided the matter differently, we may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.* (citing *Marcus*, 313 S.W.3d at 417).

## Discussion

In two issues, R.S. argues that (1) the juvenile court lost jurisdiction over him on June 1, 2023, absent a showing that the State exercised due diligence to complete the proceedings against him prior to his eighteenth birthday, and (2) the trial court erred in finding the State had "met due diligence on the case." Because we conclude the evidence supports the trial's court due diligence finding, we need not reach R.S.'s first issue. The second issue is dispositive. We thus address it first.[8]

---

[8] We understand R.S.'s first issue as challenging the State's contention, made during the hearing on his Motion to Dismiss, that the State did not have to establish due diligence because in seeking a determinate petition, the juvenile court retained jurisdiction over R.S. until he turned nineteen. Because we conclude there is some evidence to support the trial court's finding that the State established due diligence, we need not reach this issue.

## Due Diligence in Prosecuting the Case

In his second issue, R.S. argues that the State did not establish it exercised due diligence in completing the proceedings against him before his eighteenth birthday. The Family Code does not define "diligence" as used in Section 51.0412, but we have explained that due diligence "requires the State to 'move ahead' or 'reasonably explain delays.'" *In re B.R.H.*, 426 S.W.3d at 168 (citing *In re N.M.P.*, 969 S.W.2d 95, 100 (Tex. App.—Amarillo 1998, no pet.)). "Due diligence does not require the State to 'do everything perceivable and conceivable to avoid delay.'" *Id.* (citing *In re N.M.P.*, 969 S.W.2d at 100). As noted, diligence is generally a question of fact and we review the trial court's finding on that matter for abuse of discretion. *Id.* (citing *In re J.C.C.*, 952 S.W.2d at 49–50).

R.S. argues that the State was not diligent because (1) it did not file a determinate petition before R.S.'s eighteenth birthday, and (2) the grand jury met "many, many times" between February 23, 2022 and June 1, 2023,[9] yet the State waited until June 20, 2023 to present the determinate petition to the grand jury for approval. R.S. argues that the State had ninety-nine days from February 22, 2023—when it learned R.S. was fit to proceed—to R.S.'s eighteenth birthday on June 1, 2023—to seek and file a determinate petition. R.S. argues that the State "was certainly aware" that doctors at North Texas State Hospital had found R.S. fit

---

[9] The stabbing occurred on February 22, 2022, and R.S. turned eighteen on June 1, 2023.

to proceed on March 16, 2023, and that he returned to the Harris County Juvenile Detention Center on April 13, 2023. According to R.S., there was "no legal reason [] the [S]tate could not have sought grand jury approval for determinate sentencing and filed a determinate petition while it waited for R.S. to become fit to proceed." R.S. concedes the proceedings could not be completed while he remained unfit to proceed, but he argues that if the State had sought a determinate petition in February or March of 2023, the proceedings "might have been completed" by the time R.S. turned eighteen on June 1.

The State responds that it proceeded with R.S.'s case with due diligence. In support, it points to the following events that occurred after R.S. was found fit to proceed on February 22, 2023:

- February 23, 2023: The State emailed R.S.'s counsel and others asking if a lack-of-responsibility evaluation would be conducted. R.S.'s counsel advised that R.S. would not participate in such an evaluation.[10]

- April 5, 2023: The Harris County Juvenile Probation Department advised the parties that R.S. was found to be competent at the North Texas State Hospital and would be returned to Harris County on April 13.

- April 17, 2023: The State Hospital's evaluation report, which found R.S. fit to proceed, was filed.

- April 19, 2023: R.S. filed a motion to allow a private therapist to evaluate R.S.

---

[10] *See supra*, note 2.

14

- May 3, 2023: R.S.'s attorney requested a reset to wait for the evaluation results and for "defense investigation."

- June 1, 2023: R.S. turned eighteen.

- June 14, 2023: R.S.'s counsel advised the State R.S. would not pursue a "lack of responsibility" defense "at this time." The State "immediately" asked the case to be placed on the grand jury agenda.

- June 17, 2023: The State extended its first plea-bargain offer to R.S.

- June 20, 2023: The State sought a determinate petition from the grand jury.

- June 20, 2023: The State emailed R.S.'s counsel to request a "due diligence hearing" for the prescheduled June 26 setting.

- June 21, 2023: The State filed a determinate petition.

- June 23, 2023: R.S. filed a motion to dismiss for lack of jurisdiction.

The State argues R.S.'s attorney "delayed the proceedings until after [R.S.] was deemed fit to proceed in this case until June 14, 2023," when he advised the State that R.S. would not pursue a lack-of-responsibility defense. Immediately thereafter, the State asked for the case to be put on the grand jury's agenda, but the earliest available date was six days later, on June 20, 2023. Meanwhile, on June 17, 2023, the State extended a plea-bargain offer to R.S., which R.S. rejected.

Given the record before us, we cannot conclude the trial court's finding on due diligence was arbitrary and unreasonable. We must defer to the juvenile court's finding on the question of due diligence unless the record contains no evidence to support the finding. *See In re M.A.C.S.-C.*, No. 04-23-00139-CV,

15

2024 WL 697095, at *8 (Tex. App.—San Antonio Feb. 21, 2024, pet. denied) (mem. op.); *In re B.R.H.*, 426 S.W.3d at 168 (citing *Marcus*, 313 S.W.3d at 417). Here, the record reflects some evidence to support the trial court's finding that the State exercised due diligence in attempting to complete the proceedings before R.S.'s eighteenth birthday.

The State moved forward by filing its original petition within two months of the alleged delinquent conduct. Shortly after, in June 2022, the juvenile probation department determined that R.S. was unfit to proceed and he was committed to the State Hospital. In January 2023, while R.S. was still in the State Hospital, the State requested that another fitness to proceed evaluation be completed "because of the time frame and [R.S.'s] age." The State prosecutor noted that he "wanted to get the ball rolling" and he "want[ed] to make sure" there was no "delay" in R.S.'s "admission to the State Hospital, if still necessary," noting he did not want a new "fitness to proceed" to disrupt that.

The State did not obtain an official report designating R.S. as fit to proceed until April 2023, at which time he was transported back to the Harris County Juvenile Detention Center. That same month, the defense filed a motion to have R.S. evaluated by a private therapist with respect to "the lack of responsibility issue," and it was not until June 14, 2023, that R.S.'s counsel informed the State that R.S. would not assert a lack-of-responsibility defense. Three days later, the

16

State made a plea offer, and three days after that, the State went to the grand jury seeking to file a determinate petition, and immediately after, the State filed the determinate petition and requested a due diligence finding.[11] While R.S. argues there was no legal impediment to the State seeking the determinate petition before R.S. turned eighteen, the State could not complete the proceedings until R.S. was deemed fit to proceed and as the State explained to the juvenile court, whether R.S. was "sane or could assert a lack of responsibility defense" was relevant in that it could result in further investigation of that defense and could impact the State's decision to seek a determinate petition or make a plea offer.

Given the record before us, we hold that some evidence supports the trial court's finding that the State exercised due diligence in its prosecution of the case. We overrule R.S.'s second issue.[12]

## Conclusion

We affirm the trial court's judgment.

---

[11] The filing of the determinate petition did not start the process anew but, rather, related back to original petition. *See In re B.R.H.*, 426 S.W.3d 163, 166 (Tex. App.—Houston [1st Dist.] 2012) (orig. proceeding) (noting "amended petition relates back to the filing date of the original petition").

[12] Given our disposition, we need not reach R.S.'s first issue.

17

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.