# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00751-CV

---

**Sean Carter McCain, Appellant**

**v.**

**Elizabeth Mary McCain, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-15-004553, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

### O P I N I O N

This is an appeal of a final order in a suit affecting the parent-child relationship (SAPCR). The trial court rendered its order after a trial on Sean Carter McCain's petition to modify the conservatorship, possession, and support of the parties' two children and on Elizabeth Mary McCain's motion to enforce child-support and medical-support obligations. On appeal, Sean[1] challenges the trial court's award of trial and appellate attorney's fees to Elizabeth and its award to her of child-support arrearage of $5,923.55. For the following reasons, we will reverse the arrearage portion of the trial court's order and render judgment of $4,498.55 in arrearage against Sean. We will affirm the remainder of the trial court's final SAPCR order and the trial court's post-judgment temporary order awarding Elizabeth appellate attorney's fees.

---

[1] Because the parties share the same surname, for clarity we refer to them by their first names.

## BACKGROUND

Elizabeth and Sean were divorced in 2016 and have two minor children from their marriage, M.M. and C.M. Their agreed final divorce decree[2] appointed them as joint managing conservators of their children, with Elizabeth having the right to establish the children's primary residence within Travis, Williamson, and Hays Counties; Elizabeth maintaining health insurance for the children; and Sean having an expanded, modified possession order and paying Elizabeth monthly child support and cash medical support for reimbursement of insurance premiums as additional child support. The decree ordered each of the parties to pay 50% of all "additional health care expenses," defined as "any reasonable and necessary health care expenses of the children, including vision and dental expenses, that are not reimbursed by insurance" and "any amounts paid by either party as deductibles or copayments for health care services for the children." *See* Tex. Fam. Code § 154.183(c) (defining term similarly).

In 2018 Sean filed a petition to modify the parent-child relationship, seeking the exclusive right to establish the children's residence within Travis County and contiguous counties, the right to receive child-support payments, and the right to have some exclusive decision-making authority over the children's education and medical and psychiatric treatment. After filing a general-denial answer, Elizabeth filed a motion for enforcement of the decree in which she alleged that Sean had failed to make required payments to her, totaling $9,801.05, that she incurred for one of the children's medical care and expenses related to dyslexia. The trial court conducted a two-day bench trial in May 2019 and signed a final order on October 1, 2019,

---

[2] The divorce decree was clarified by a subsequent agreed Order Clarifying and Enforcing Child Support Obligation rendered on October 3, 2017. For purposes of this opinion, we use the terms "decree" and "divorce decree" to refer collectively to the agreed final decree of divorce and the agreed clarification order, and we use the terms "original decree" and "clarifying order" to refer to those orders separately when such distinction is relevant.

denying Sean's requested modifications, except for a change to the summer-possession schedule, and awarding Elizabeth $5,923.55 in child-support arrearage and $20,000 in attorney's fees. Sean filed a notice of appeal on October 29, after which Elizabeth filed a motion for temporary orders pending appeal, alleging that the orders "are necessary to preserve and protect the safety and welfare of the children the subject of this suit" and asking the trial court to "make orders as necessary and equitable including requiring payment of reasonable and necessary appellate attorney's fees and expenses." *See id.* § 109.001. On December 20, 2019, the trial court heard Elizabeth's motion and signed a temporary order on December 23 that awarded her $15,000 for attorney's fees on appeal to this Court with additional awards if oral argument were granted and if the case were appealed to the supreme court. These awards were conditional on Sean's "pursuit of an ultimately unsuccessful appeal," with an "unsuccessful appeal" defined as "a denial of any one of the issues raised by [him] on appeal."

## DISCUSSION

In several issues, Sean challenges the trial court's temporary order awarding Elizabeth appellate attorney's fees, *see id.* § 109.001(b-5)(2) (allowing party to seek review of temporary order by "proper assignment in the party's brief"), and its final order that awarded Elizabeth child-support arrearage and trial-level attorney's fees.

In his first issue, Sean contends that the evidence was insufficient to support the trial court's finding that appellate attorney's fees are necessary to "preserve and protect the safety and welfare" of the children during the pendency of the appeal and that the trial court's award to Elizabeth of those fees in its temporary order was therefore an abuse of discretion. *See id.* § 109.001(a) (authorizing trial court to make "any order necessary to preserve and protect the

3

safety and welfare of the child during the pendency of an appeal as the court may deem necessary and equitable," including for "payment of reasonable attorney's fees and expenses"); *In re Wiese*, No. 03-15-00062-CV, 2015 WL 4907030, at *1 (Tex. App.—Austin Aug. 12, 2015, orig. proceeding) (mem. op.) (noting that appellate court reviews trial court's award of attorney's fees under Section 109.001 for abuse of discretion); *see also In re Rogers*, 370 S.W.3d 443, 448 (Tex. App.—Austin 2012, orig. proceeding) (conditionally granting mandamus relief where wife failed to produce any evidence supporting award of interim attorney's fees under similar statute). Legal and factual sufficiency are relevant factors in determining whether a trial court has abused its discretion in making a Section 109.001 determination. *See Wiese*, 2015 WL 4907030, at *1. In reviewing the evidence in the context of an abuse-of-discretion standard, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and if so, (2) whether the trial court erred in the application of discretion; that is, whether based on the evidence, the trial court made a decision that was neither arbitrary nor unreasonable. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

The party moving for an award under Section 109.001 has the burden of proving that the sought award is necessary to preserve and protect the safety and welfare of the children during pendency of an appeal. *Wiese*, 2015 WL 49070300, at *1; *see* Tex. Fam. Code § 109.001. The statute does not define the terms "safety" and "welfare," and we thus construe them according to their ordinary, common meanings. *See Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017) (noting that when statute does not define term, courts apply its common, ordinary meaning unless different meaning is implied from statute's language and "look first" to term's dictionary definition). "Safety" means "the condition of being safe from undergoing or causing hurt, injury, or

4

loss," while "safe" means "free from harm or risk" or "secure from threat of danger, harm, or loss." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/safe, https://www.merriam-webster.com/dictionary/safety. "Welfare" means "the state of doing well especially in respect to good fortune, happiness, well-being, or prosperity." *Id.* at https://www.merriam-webster.com/dictionary/welfare. Elizabeth was therefore required to prove that the appellate attorney's fees she sought were necessary to preserve and protect the children's well-being and security from harm, loss, or the threat of harm or loss while Sean's appeal is pending.

After reviewing the record, we conclude that the trial court's decision was not arbitrary or unreasonable in light of the evidence before it. Elizabeth testified that she had less than $50 a month remaining in her budget after paying for her known expenses. Notably, her budget did not include any expenses for childcare (which she would have to secure in the coming months as the children would be on summer vacation from school), clothing and shoes for herself or the children, C.M.'s athletic activities, M.M.'s academic electives, tutoring for the children, any unanticipated costs such as replacing lost personal items belonging to the children, and any rental or mortgage payments on their home should she start incurring them.[3] She testified that if she were to need significant car repairs, the children were to have a medical emergency, or they encountered another type of unanticipated expense, she had only an approximate "$3,000 cushion" if she were to withdraw her IRA to cover such expense. She submitted evidence demonstrating that her appellate attorney's fees for proceedings at this Court would range between $18,000 and $30,000 and—although she had already paid her attorneys a

---

[3] Elizabeth testified that she and the children were living in her parents' condo free of charge at the time of the hearing. Pursuant to the decree, she has primary financial responsibility for maintaining the children's home.

retainer of $13,000 for the appeal—she testified that she had financed the retainer with a credit card, would have to pay off that amount, and that her budget did not include any amounts for making payments on her unsecured credit-card debt. She testified that because she was "carrying the $13,000 debt now," that debt had affected her credit score and her access to additional credit was "very limited," and she had been able to open another credit card with a credit limit of only $1,500. She submitted evidence that she had incurred trial-level attorney's fees of over $50,000.

Two of our sister courts have determined that evidence was sufficient to justify appellate attorney's fees under Section 109.001 when the recipient had "primary responsibility of the children and for the care and upkeep of and the debt on the children's principal home," *see In re Garza*, 153 S.W.3d 97, 101 (Tex. App.—San Antonio 2004, orig. proceeding), and when the recipient had primary responsibility for the child and the child's principal home, had a "lack of funds" and "still owe[d her attorney] money," and would incur at least $10,000 to defend an appeal, *see Marcus v. Smith*, 313 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We conclude that the evidence in this case is more analogous to that in *Garza* and *Marcus* than in the two cases from this Court that Sean cites. *See Wiese*, 2015 WL 4907030, at *2–3 (holding that trial court abused discretion in awarding fees when evidence demonstrated parties' income disparity and that fees would allow children to travel internationally to visit mother's family but did not demonstrate that income disparity or mother's having to pay her own appellate attorney's fees would negatively affect children); *Rogers*, 370 S.W.3d at 447 (holding that trial court abused discretion in awarding fees when mother testified that litigation was negatively impacting her financial resources but "did not testify at all regarding how her finances were affecting the children" but, rather, effectively admitted that interim fees would have "no effect"

6

on their safety and welfare). In light of the cited evidence—which we credit in favor of the trial court's decision while disregarding all contrary evidence, unless a reasonable trial court could not do so or its decision is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, *see Mason v. Mason*, No. 03-17-00546-CV, 2019 WL 1967166, at *2 n.2 (Tex. App.—Austin May 3, 2019, no pet.) (mem. op.)—and given the broad discretion trial courts have to award attorney's fees under Section 109.001, *see In re Moore*, 511 S.W.3d 278, 288 (Tex. App.—Dallas 2016, no pet.), we hold that the trial court did not abuse its discretion in awarding Elizabeth Section 109.001 fees in its temporary order. We accordingly overrule Sean's first issue.[4]

In his related second issue, Sean complains that the trial court's temporary order awarding Elizabeth appellate attorney's fees is reversible error because the order did not condition the award on Sean's unsuccessful appeal as to every issue he raised but instead ordered that Elizabeth would have to repay Sean the fees only if he prevailed on each issue he raised on appeal. To support his argument, Sean cites caselaw outlining the general rule that a party "should not be penalized for pursuing a meritorious appeal," *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 115 (Tex. 2018), and that a trial court cannot require an appellant to pay appellee's appellate attorney's fees for any appellate issue on which the appellant is the prevailing party, *e.g.*, *Robertson v. Robertson*, No. 13-16-00309-CV, 2017 WL 6546005, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2017, no pet.) (mem. op.).

---

[4] Within this same issue, Sean argues that Elizabeth was required to present evidence demonstrating that the issues on appeal relate to the children's safety and welfare, but Section 109.001 does not expressly require that, and the case he cites does not either. *See In re Wiese*, No. 03-15-00062-CV, 2015 WL 49070300, at *3 (Tex. App.—Austin Aug. 12, 2015, orig. proceeding) (mem. op.) (noting that evidence related to underlying issues on appeal *may*, under certain circumstances, support Section 109.001 fee award but not requiring that party produce evidence of same).

While we acknowledge that general rule, several of our sister courts have held that awards under Section 109.001 are an exception to the general rule because conditioning the award of appellate fees in SAPCRs "may defeat the ability of the parent who prevails in the trial court to defend the order being appealed as one that is in the best interest of the child." *In re Jafarzadeh*, No. 05-14-01576-CV, 2015 WL 72693, at *2 (Tex. App.—Dallas Jan. 2, 2015, orig. proceeding) (mem. op.) ("An award of attorney's fees in a SAPCR under the family code is not based on a punitive rationale or a damages rationale, but rather on the rationale that the award of attorney's fees is in the best interest of the child."); *see In re Mansour*, __ S.W. 3d __, No. 04-19-00899-CV, 2020 WL 1159050, at *4 (Tex. App.—San Antonio Mar. 11, 2020, orig. proceeding) (concluding same); *see also Davenport v. Davenport*, No. 01-15-01301-CV, 2016 WL 7011406, at *8 n.7 (Tex. App.—Houston [1st Dist.] Dec. 1, 2016, no pet.) (mem. op.) (acknowledging exception to general rule but declining to apply it when fees were not awarded in temporary orders under Section 109.001). *But see Halleman v. Halleman*, Nos. 02-11-00238-CV, 02-11-00259-CV, 2011 WL 5247882, at *5 (Tex. App.—Fort Worth Nov. 3, 2011, no pet.) (mem. op.) (consolidated appeal and orig. proceeding) (modifying trial court's temporary order awarding appellate attorney's fees under Section 109.001 to make it contingent on receiving party's success on appeal); *Marcus*, 313 S.W.3d at 418 (modifying trial court's unconditional award of appellate attorney's fees under Section 109.001 to make them contingent upon successful appeal). We think the reasoning in *Jafarzadeh* and *Mansour* is sound and is supported by the broad discretion afforded to trial courts under Section 109.001. *See* Tex. Fam. Code § 109.001 (providing that trial court may "make *any* order necessary to preserve and protect" children's safety and welfare during pendency of appeal (emphasis added)). Accordingly, we conclude that the trial court did not abuse its discretion by not conditioning its award of appellate

8

attorney's fees on Sean's being unsuccessful on each of his issues, and we overrule Sean's second issue.

In his third and fourth issues, Sean contends that there was insufficient evidence to support the child-support arrearage[5] because (a) Elizabeth did not timely send him documentation of medical expenses she incurred on behalf of the children and (b) Elizabeth did not use a preferred provider when incurring the medical expenses. We review the trial court's ruling on Elizabeth's motion for enforcement for abuse of discretion. *See Rudolph v. Jamieson*, No. 03-17-00693-CV, 2018 WL 2648514, at *4 (Tex. App.—Austin June 5, 2018, pet. denied) (mem. op.); *Foreman v. Foreman*, No. 03-13-00245-CV, 2014 WL 711249, at *3 (Tex. App.—Austin Feb. 19, 2014, no pet.) (mem. op.). In a child-support enforcement action, the movant has the burden to prove both the amount of the alleged child-support obligation and the amount of the arrearage. *In re M.S.C.*, No. 05-14-01581-CV, 2016 WL 929218, at *3 (Tex. App.—Dallas Mar. 11, 2016, no pet.) (mem. op.).

As to his third issue, Sean argues that pursuant to the divorce decree, his reimbursement obligation for the medical expenses at issue was triggered only if Elizabeth sent him documentation of such expenses within thirty days of her receiving documentation from the providers, which she admittedly did not do, citing the following provision in the decree:[6]

> The party who incurs a health care expense on behalf of the children is ORDERED to submit to the non-incurring party(ies) all forms, receipts, bills, and statements reflecting the health care expenses within 30 days after he or she

---

[5] Sean takes issue with the following arrearages awarded to Elizabeth: $673.55 for certain medical expenses that were listed on Elizabeth's Exhibit K, $450 for M.M.'s therapy sessions, and $1,425 for M.M.'s neuropsychological evaluation.

[6] This provision appears in the clarifying order rather than the original decree, but the substantive provisions relevant to Sean's third issue appear in both orders.

9

receives them. The party shall itemize those expenses for which payment or reimbursement is sought. Each non-incurring party who is also a parent is ORDERED to pay his or her share or percentage of the health care expenses either by paying the health care provider directly or by reimbursing the incurring party within 30 days after the non-incurring party receives the forms, receipts, bills, or statements.

This issue turns on construction of the agreed decree, which is a question of law that we review de novo. *See Rudolph*, 2018 WL 2648514, at *4 ("[W]e review issues regarding the trial court's interpretation of a divorce decree de novo[, and] . . . settlement agreements incorporated into the final divorce decree . . . are treated as contracts and governed by contract law." (citations omitted)); *Foreman*, 2014 WL 711249, at *3 ("To the extent the district court's ruling [on a motion for enforcement] rests on questions of law, whether in the context of an abuse-of-discretion analysis or otherwise, we review those determinations de novo.").

Sean contends that this provision's requirement that Elizabeth provide him documentation of any health care expenses that she incurs within thirty days of her receipt of such documentation functions as a "condition precedent" and that, because she did not comply, his obligation to reimburse her never arose. A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). Terms such as "if," "provided that," or "on condition that" typically must be included in a contract to make performance specifically conditional, and their absence is probative of the parties' intent that there is no condition imposed. *See id.* "When no conditional language is used and another reasonable interpretation of the contract is possible, 'the terms will be construed as a covenant in order to prevent a forfeiture.'" *Id.* (quoting *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)). The provision that Sean cites contains no conditional

language, and it is reasonable to construe the provision as a covenant rather than a condition precedent based on the other provision in the decree requiring each parent to pay 50% of the children's health care expenses that are not reimbursed by insurance.

Furthermore, Sean's contention is at odds with the overarching policy in family law that each parent is obligated to support his or her child during the child's minority and is liable to any other person, including the other parent, who provides necessaries for that child. *See In re A.C.B.*, 302 S.W.3d 560, 565 (Tex. App.—Amarillo 2009, no pet.) (holding that, notwithstanding decree provision requiring parent to provide other parent with copies of medical bills within ten days, evidence was legally and factually sufficient to support award for unreimbursed medical bills that had been provided untimely due to each parent's obligation to provide for necessaries); *see also* Tex. Fam. Code § 154.001 (listing among parent's duties "the duty to support the child, including . . . medical and dental care" and stating that parent "who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed"); *Roberts v. Roberts*, No. 03-99-00296-CV, 2000 WL 45642, at *2 (Tex. App.—Austin Jan. 21, 2000, no pet.) (not designated for publication) (noting that each parent who provides necessaries for child may bring suit to recover from other parent who fails to discharge duty of support). *But see In re L.K.*, No. 02-18-00049-CV, 2018 WL 5832131, at *3–4 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) (mem. op.) (collecting cases, holding that part of movant's burden in enforcement action concerning decree requiring party incurring health care expenses to provide documentation to other party within thirty days was to show that she timely provided such documents so as to trigger payment obligation, and reversing trial court's enforcement order). Because we do not construe the thirty-day documentation provision as a condition precedent, because the decree required Sean to pay for 50% of the children's health

care expenses, because of Sean's statutory duty to provide for the children's necessaries, and because Elizabeth ultimately (albeit untimely) provided Sean with documentation[7] for each of the contested expenses, we overrule Sean's third issue.

In his fourth issue, Sean argues that the trial court abused its discretion in making its arrearage award for M.M.'s therapy with Dr. Carter and neuropsychological exam with Dr. Robillard because Elizabeth did not use preferred providers for the care. He cites the following provisions in the decree to support his argument:

- Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to use "preferred providers," or services within the health maintenance organization, if applicable.

- "Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges.[8]

Based on these provisions, Sean contends that Elizabeth did not prove that either challenged expense was reimbursable because she did not use a preferred provider, act in a way so as to maximize insurance reimbursement, or show that using a non-preferred provider was reasonable

---

[7] While Elizabeth was not able to prove that for each of the challenged expenses she had provided Sean with provider receipts for the charges (i.e., copays) she claimed to have incurred, she did provide evidence that for each of the challenged expenses she provided Sean with at least the insurer's "explanation of benefits" (EOB), albeit untimely. Sean does not contend on appeal that such EOBs were insufficient to prove that Elizabeth had incurred the challenged expenses but merely contends that the EOBs (and any provider receipts that she did provide) were untimely.

[8] As noted above, the decree ordered each party to pay 50% of all "additional health care expenses," which were defined to include "any reasonable and necessary health care expenses of the children, including vision and dental expenses, that are not reimbursed by insurance."

12

and necessary. On this record, we conclude that the trial court did not abuse its discretion in finding that Elizabeth met her burden as to the charges for M.M.'s therapy but that it did abuse its discretion in finding that Elizabeth met her burden as to the neuropsychological exam.

The first provision that Sean cites requires the use of a preferred provider, but only "if applicable." While Elizabeth admitted that M.M.'s therapist was not a preferred provider, she also testified that she "tried" to find preferred providers to provide the challenged therapy to M.M. but that, of the few therapists who will see children of "high-conflict divorces," [9] "those that will" see such children do not accept insurance because they "know that they don't need to go through insurance so they don't." We conclude that this constituted legally and factually sufficient evidence to support the trial court's implied finding that use of a preferred provider was not "applicable" under such circumstances. [10]

However, as to Sean's challenge to Elizabeth's use of a non-preferred provider for M.M.'s neuropsychological exam, we conclude that there is legally insufficient evidence to support the trial court's implied finding that use of a preferred provider for that service was not "applicable." As to this challenged expense—and unlike her testimony about M.M.'s therapy—

---

[9] Elizabeth testified that she and Sean are a "high-conflict couple" that underwent a "high-conflict divorce."

[10] As to Sean's other two complaints—that Elizabeth did not act in a way "to maximize insurance reimbursement" or prove that use of a non-preferred provider was "reasonable and necessary"—we need not address them at any length. Firstly, while Sean is correct that the first cited decree provision requires each incurring party to "conform" to all insurance-policy requirements so as to "assure maximum reimbursement," he does not contend or identify any particular insurance-policy "requirements" with which Elizabeth did not comply. Secondly, neither of the decree provisions that Sean cites expressly require an incurring party to demonstrate that use of a *non*-preferred provider is "reasonable and necessary." Rather, the decree's definition of "reasonable and necessary" health care expenses is quite broad, including "without limitation" "any" "medical" and "health-care services," which necessarily includes the challenged therapy.

13

Elizabeth testified that (1) she did not know whether it is "difficult" to find neuropsychologists for children with dyslexia when there is a high-conflict divorce, (2) the fact that the divorce was high-conflict was not a "consideration" for her in choosing the provider, (3) she "honestly" was "not even sure how to find [such] preferred providers" but instead relied on "recommendations from others," and (4) had "not tried" calling their insurance company and asking for a list of preferred providers. Accordingly, we overrule Sean's fourth issue as to the arrearage award of $450 for Dr. Carter's therapy but sustain the issue as to the award of $1,425 for Dr. Robillard's neurophysiological exam.

In his fifth issue, Sean argues that the trial court abused its discretion in ordering him to pay half ($1,500) of M.M.'s private-school tuition[11] because the decree "requires that the children remain in public school." This issue turns on construction of the agreed decree, which is governed by contract law and is a question of law that we review de novo. *See Rudolph*, 2018 WL 2648514, at *4; *Foreman*, 2014 WL 711249, at *3. We disagree with Sean and conclude that the decree does not require Elizabeth to keep M.M. in public school.

To support his argument, Sean cites the italicized clause of the following provision in the decree:

> [The mother has] the right to make decisions concerning the children's education after conferring with the father; after ten days the mother shall make a final decision; *the mother shall keep the children in their current school district unless the school addresses enrollment of the mother's address*[12] *(the mother will not*

---

[11] At the hearing, Sean testified that Elizabeth had enrolled M.M. for the following school year at a private school (the Odyssey School) specializing in assisting children who have dyslexia.

[12] At the time the decree was rendered, the parties were apparently using the address of a condo (at which they did not live) owned by Elizabeth's parents to establish the school district for the children. By the time of the proceedings at issue in the appeal, Elizabeth was living in the condo.

14

> *take actions to alter the current status—meaning notifying the school of the "use"*
> *of the condo access/address)*; however, the children's attendance of any future
> school or school district shall be dependent on the mother's residence[.]

(Emphasis added.) Although if read in isolation the italicized clause might arguably be construed to require that the children remain in their then-current public school indefinitely—unless the school district "addresses the enrollment of mother's address"—we must harmonize it with the remainder of the decree, if possible, bearing in mind that a specific provision controls over a general one. *See Trudy's Tex. Star, Inc. v. Weingarten Realty Invs.*, No. 03-03-00538-CV, 2004 WL 1792374, at *3 (Tex. App.—Austin Aug. 12, 2004, pet. denied) (mem. op.) (citing *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983) and *Forbau v. Aetna Life Ins.*, 876 S.W.2d 132, 133–34 (Tex. 1994)). The decree contains a more specific provision expressly contemplating that M.M. may require private schooling due to her disabilities and providing for its payment:

> Disabilities – Each party shall pay as additional child support for
> 50% fees associated with [M.M.]'s *private tutoring, school, and*
> *camps associated with her disabilities*, including but not limited to,
> dyslexia, as long as necessary.

(Emphasis added.) Pursuant to prevailing grammatical rules, and contrary to what Sean contends, the adjective "private" modifies not only "tutoring" but also "school" and "camps." *See In re H.S.*, 550 S.W.3d 151, 157 (Tex. 2018) (endorsing grammatical rule that adjective preceding uninterrupted series of nouns modifies all following nouns in phrase (citing *Iliff v. Iliff*, 339 S.W.3d 74, 80 (Tex. 2011))); *Howard v. Howard*, 490 S.W.3d 179, 186 n.2 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("[T]he first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears." (citations

15

omitted)). Harmonizing this paragraph with the previously quoted paragraph requires the conclusion that Elizabeth is permitted to enroll M.M. in a private school that specializes in assisting children with dyslexia and that Sean must pay for half of the associated fees.[13] Accordingly, we overrule Sean's fifth issue.

In his sixth and final issue, Sean contends that the trial court's award to Elizabeth of $20,000 in trial-level attorney's fees in its October 1, 2019 order is void because the court had lost plenary power by then due to an earlier July 23, 2019 letter ruling that constituted the trial court's "final order." *See In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (recognizing that, except for correction of clerical orders, trial court's orders rendered after its plenary power has expired are void); *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) ("Judicial action taken after the court's jurisdiction over a cause has expired is a nullity.").

The July 23, 2019 letter ruling stated that (a) Sean's petition to modify was denied except as to one amendment to the summer-possession schedule and (b) Elizabeth's motion for enforcement was granted as to several enumerated amounts for therapy, medical, and school expenses that Sean was ordered to pay Elizabeth by August 30. The letter ruling concluded, "Now that you have my ruling, please prepare an order, circulate it for approval as to form, and submit it for signature at your convenience." However, the letter ruling did not (a) state that it

---

[13] Sean alternatively argues that the term "fees" is distinct from and does not include the cost of "tuition"—and because Elizabeth seeks Sean's payment of half the "tuition" cost for the Odyssey School, that cost does not fall under the term "fees"—but such argument is not supported by the ordinary meanings of "fees" and "tuition." *See, e.g.*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fee (defining "fee" as "a sum paid or charged for a service"), https://www.merriam-webster.com/dictionary/tuition (defining "tuition" as "the price of or payment for instruction"). In the context of this decree, we conclude that the broad term "fee" necessarily includes charges for the service of instruction, i.e., tuition. *See id.*, https://www.merriam-webster.com/dictionary/service (defining service, relevantly, as "useful labor that does not produce a tangible commodity").

was final and appealable, (b) contain a Mother Hubbard clause, (c) address Elizabeth's request for attorney's fees, or (d) include the statutorily required contents for final SAPCR orders. *See* Tex. Fam. Code § 105.006. Therefore, we examine the entire record—"placing [the] order in its context"—to determine whether the trial court intended, at the time it signed the July 23 letter ruling, for it to be a final and appealable order. *In the Interest of R.R.K.*, 590 S.W.3d 535, 541–43 (Tex. 2019) (holding that when order is signed after conventional trial on merits, presumption of order's finality may be overcome by ambiguity or doubts as to its finality, and appellate court must review record to determine whether trial court intended it to be final); *see Schwartz v. Schwartz*, No. 03-15-00651-CV, 2016 WL 5874873, at \*2 (Tex. App.—Austin Oct. 5, 2016, pet. denied) (mem. op.) ("The focus of the analysis is whether the trial judge, at the time he signed the letter, intended that it be a final appealable judgment or order.").

On August 12, 2019, Sean filed a request for findings of fact and conclusions of law, referring to the July 23 letter ruling as the court's "final judgment." On August 23, the trial court sent the parties another letter ruling, stating that the court had received a request from Elizabeth's attorney to rule on Elizabeth's request for attorney's fees and that the court was "grant[ing] a judgment" of $20,000 in attorney's fees to Elizabeth because she was "the predominately prevailing party." Again, the trial court directed the parties to "prepare an order, circulate it for approval as to form, and submit it for signature at your earliest convenience." On September 4, Sean filed a notice of past-due findings of fact and conclusions of law. In a September 12 letter to the parties, the trial court stated that Sean's notice of past-due findings was "premature as no judgment has been signed and entered in this cause" and that the court had "only rendered rulings by letter with instructions for the parties to prepare the order."

17

Then, on October 1, 2019, the trial court signed its eight-page "Order in Suit to Modify Parent-Child Relationship and Judgment for Child Support Arrearage."

We conclude, in the context of the entire record, that the trial court's July 23 letter ruling was not a final, appealable judgment. Rather, the following circumstances evince the trial court's intent that the July 23 letter ruling *not* constitute its final judgment: (1) the trial court's request in its July 23 letter ruling—and the August 23 letter ruling—that the parties prepare an order for its signature; (2) the July 23 letter ruling's failure to address Elizabeth's request for attorney's fees, state that it finally adjudicates all claims between the parties and is a final and appealable order, and include the required statutory contents for final SAPCR orders; (3) the trial court's statement in its September 12 letter that no final judgment had been signed but only letter rulings; and (4) the trial court's October 1 signed order that contained all of its rulings on the issues raised by the parties as well as the required statutory contents for final SAPCR orders. The trial court's award of trial-level attorney's fees in the October 1, 2019 order is not void because that order constituted the trial court's final judgment. Accordingly, we overrule Sean's sixth issue.

## CONCLUSION

We reverse the trial court's determination of child-support arrearage totaling $5,923.55, render judgment that the arrearage is $4,498.55, and affirm the remainder of the trial court's final order. We also affirm the trial court's award of appellate attorney's fees in its temporary order.

18

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed in Part; Reversed and Rendered in Part

Filed:   October 28, 2021