**IN RE Jon Paul MOORE, Relator**

**In the Interest of N.A.M., a Child**

**No. 05–14–01173–CV**

Court of Appeals of Texas, Dallas.

Opinion Filed January 7, 2016

Charles 'Chad' Baruch, Dallas, TX, for appellants.

Blaise M. Gormley, Dallas, TX, for appellees.

Before Justices Lang–Miers, Brown, and Schenck

## OPINION

Opinion by Justice Lang–Miers

In this suit affecting the parent–child relationship, Father appeals orders modifying child support and requiring him to pay Mother's appellate attorney's fees and expenses. For the reasons that follow, we affirm the orders.

### BACKGROUND

Mother and Father married in 2002, had a child, N, in 2005, and divorced in 2012. Their settlement agreement appointed them joint managing conservators of N with Mother having the exclusive right to designate N's primary residence. Additionally, the parties agreed to divide their community property equally, with Mother receiving the marital home along with its mortgage and related expenses, and neither party paying child support. About

fourteen months later, Mother filed a petition to modify in which she asked the trial court to order Father to pay monthly child support in accordance with the maximum child support guidelines. Father answered and denied that there had been a material and substantial change in circumstances to justify modifying the child support and characterized Mother's complaint as "buyer's remorse."

At a bench trial, Mother presented evidence that her income had steadily decreased since the divorce and that Father's income had increased. The evidence showed that Mother was employed as a commercial property insurance broker and Father was employed as a commercial real estate lender for a private bank; they had roughly equal incomes during their marriage. Mother testified that since the divorce her base salary had remained relatively constant at $94,000, but her bonuses had steadily decreased because of decreasing commercial property insurance premium rates. She explained that her bonus was calculated as a percent of commission, which was calculated as a percent of premiums, and premiums had decreased because the "property rates in the commercial market have decreased steadily[.]" She testified that "commercial property rates are just very low" and that she was renewing "accounts at 15[%] to 25[%] premium decrease or rate decrease." She said she "had roughly close to a $20,000 decrease" in income since the divorce. She agreed that at the time of divorce she knew her bonus for 2012 would be lower than it had been in the past, but she said she did not anticipate her bonuses would continue to decrease.

Mother also testified that while she knew the divorce decree required her to pay the mortgage and related household expenses, those expenses had gone up due to her having primary care of N. She also testified that Father reimbursed her only $1500 for N's expenses for the year 2013. She said she "dipped into the savings that [she] was going to use for [N's] college" to pay some of those expenses and, because of that, N "is not seeing any difference himself" as a result of her decrease in income. She testified that she had used over half of her savings to pay expenses, including attorney's fees in this matter. In response to the trial court's questions, Mother testified that prior to the divorce she "felt that [she] could handle the house payment." She said she "realized [she was] biting off this big chunk" of bills, including property insurance and taxes and the house payment, but she thought she could make those payments.

Father cross-examined Mother on the circumstances that existed at the time of divorce to support his argument that there had been no material and substantial change in circumstances and that Mother "was fully informed of the nature of the fluctuations" in her bonuses at the time of divorce. Father attempted to get Mother to pinpoint a specific event that allegedly caused a change in circumstances, but Mother testified that the change in circumstances was not something she could relate to a particular month and that it happened "over a long period of time[.]" Mother testified that the steady decrease in bonuses was not something she anticipated at the time of divorce.

With regard to Father's income, the evidence showed it was $154,539 in 2011, fell somewhat in 2013, and increased again to a projected $169,000 in 2014, with the potential for more bonuses in 2014. Father testified that there was "a substantial difference in [his] income" because of fluctuating bonuses, but he did not consider that a "substantial change of circumstances" because his "bonus has always fluctuated" and "that was perfectly consistent with the

reality and the circumstances that were in place" at the time of divorce.

After hearing all the evidence, the court modified the agreed decree of divorce and ordered Father to pay $1500 per month in child support, $7500 in retroactive child support, and $7500 in attorney's fees to Mother. Father appealed. While the appeal was pending, Mother moved for temporary orders pending appeal in which she sought conditional appellate attorney's fees in the amount of $52,500. After a hearing, the trial court granted Mother's motion, and Father challenged the order in a petition for writ of mandamus. We consolidated the mandamus proceeding and appeal and ordered the parties to address the issues in their briefs on appeal.

### MODIFICATION OF CHILD SUPPORT

In issue one on appeal, Father contends that Mother did not prove a material and substantial change in circumstances to justify a modification, one year later, to their agreement that neither parent would pay child support. He contends that Mother filed the motion to modify because, among other things, she had "buyer's remorse" about agreeing to no child support. He argues that the only change in their circumstances was the fluctuation of their respective bonuses, which he contends was an anticipated circumstance at the time of divorce and will not support a modification. In issue two on appeal, Father argues that the trial court abused its discretion, for the same reasons raised in issue one, when it ordered him to pay retroactive child support. And in issue three on appeal, Father argues that the award of $7500 in attorney's fees must be reversed if he prevails on issues one and two.

### Applicable Law

■ When parents agree to a support order that is different from the amount required by the child support guidelines, the trial court has discretion to modify the support order "only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." TEX. FAM.CODE ANN. § 156.401(a–1) (West Supp.2015). The movant bears the burden to show a material and substantial change in circumstances. *In re P.C.S.*, 320 S.W.3d 525, 530 (Tex.App.–Dallas 2010, pet. denied). The trial court determines whether the movant satisfied its burden by comparing the circumstances at the time of the initial order with those at the time the modification is sought. *Id.*

### Standard of Review

■ A trial court has broad discretion to decide the best interest of a child in family law matters, and we review the trial court's decision to modify a child support order for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Id.* Under this standard of review, we consider the legal and factual sufficiency of the evidence in our assessment of whether the court abused its discretion. *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex.App.–Dallas 2008, pet. denied). We review the evidence in the light most favorable to the court's rulings and indulge every presumption in favor of the rulings. *Id.* If some probative and substantive evidence supports the rulings, there is no abuse of discretion. *Id.*

### Discussion

■ Father argues that a modification cannot be based on a circumstance that was anticipated at the time of the initial order and that Mother's testimony showed she anticipated at the time of divorce that her bonuses would fluctuate. However,

anticipating that bonuses will fluctuate over time is different from anticipating that bonuses will steadily decrease. Mother testified that her bonus had continued to decline since 2012. She explained that her bonus is a product of her commissions and premium rates, and that premium rates have decreased from 15% to 25% since the divorce, something she did not anticipate at the time of divorce.

Mother's W–2 forms showed that her income was $145,986 in 2011, $128,782 in 2012, and $124,258 in 2013.[1] Mother also testified that she had to use savings— savings intended to be used for N's college expenses—as a result of her decreased income. Conversely, Father's W–2 forms showed his income was $154,539 for 2011 and $157,075 for 2012. Although his W–2 for 2013 showed his income was $122,047, six months into 2014 Father had already received $103,938 in income, including two bonuses totaling $47,500, with the possibility of more bonuses. Father's projected income for 2014, without any additional bonuses, was over $169,000.

The evidence showed that Mother did not anticipate a steadily decreasing income when she agreed to no child support. Based on Father's increase in income, Mother's decrease in income, and Mother's use of savings to cover expenses, we conclude that the trial court had sufficient evidence upon which to exercise its discretion to find a material and substantial change in circumstances since the divorce. *See Watkins v. Austin*, 590 S.W.2d 830, 832 (Tex.Civ.App.—Dallas 1979, no writ) (steady decline in income over seven-month period without offsetting circumstances in overall financial situation constituted material and substantial change justifying modification of child support);

*Labowitz v. Labowitz*, 542 S.W.2d 922, 925–26 (Tex.Civ.App.—Dallas 1976, no writ) ("Anticipation of income continuing at a higher level could influence a parent not to demand child support or a court not to consider it warranted. Consequently, if income decreases it may be a material and substantial change of circumstances.") We resolve issue one against Father.

■ In issue two, Father argues that "[f]or all the reasons enunciated in the previous section, the trial court abused its discretion in awarding retroactive child support." Generally, a trial court does not abuse its discretion by ordering child support retroactive to the date of service of citation or an appearance in the suit to modify. TEX. FAM.CODE ANN. §§ 154.009(a)(1) (West 2014) (court may order parent to pay retroactive child support if parent not previously ordered to pay support); 156.401(b)(2) (West Supp. 2015) (support order may be modified with regard to obligations accruing after appearance in suit to modify). Father made an appearance in the suit to modify in July 2013. Thirteen months later the court ordered Father to pay five months' retroactive support. The evidence showed that Father contributed minimally to the support of his child and that in the year 2013 he had contributed a total of about $1500 towards N's support. Given our disposition of Father's previous issue and because Father had never been ordered to pay support, we conclude that five months of retroactive child support was not an abuse of discretion. *See id.* § 154.009(a)(1) (West 2014); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (per curiam). We resolve issue two against Father.

1. The parties' attorneys seemed to agree that Mother's income was approximately $128,000 in 2013, but her W–2 reflected this amount.

We do not need to reach issue three because it was conditioned on deciding issues one and two in Father's favor.

### CONDITIONAL APPELLATE ATTORNEY'S FEES

After Father filed a notice of appeal of the modification order, Mother moved for an award of $52,500 in conditional appellate attorney's fees under family code section 109.001. Section 109.001 authorizes a trial court, within 30 days from the date an appeal is perfected, to "make any order necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal as the court may deem necessary and equitable," including the payment of reasonable attorney's fees and expenses.[2] TEX. FAM.CODE ANN. § 109.001(a)(5). The court granted Mother's motion in an October 1, 2014 order (the Order). The Order was conditioned on Father's unsuccessful appeal, and it provided for up to $50,000 in remittiturs for actions not taken.[3] Father filed a petition for writ of mandamus challenging the Order, and we consolidated the mandamus proceeding into the appeal.[4]

### Is Review by Mandamus Required?

Our threshold inquiry is whether mandamus is the appropriate vehicle to attack the Order. Father contends that "[m]andamus is the appropriate—and, indeed, only—means to challenge temporary orders pending appeal." As support, he cites subsection (c) of section 109.001 and *Johnson v. Johnson,* 948 S.W.2d 835, 838 (Tex.App.–San Antonio 1997, writ denied).

Subsection (c) states, "A temporary order rendered under this section is not subject to interlocutory appeal." TEX. FAM. CODE ANN. § 109.001(c). The *Johnson* court cited subsection (c) and declined to review a section 109.001 order on appeal stating, "Such fees are awarded in a temporary order which is not subject to interlocutory appeal.... Mandamus, not the instant appeal, is the appropriate remedy to attack such an order." 948 S.W.2d at 838 (internal citations omitted). Other courts, citing *Johnson,* have declined to exercise appellate jurisdiction to review a section 109.001 order in the pending appeal, stating mandamus is the only means by which to review such an order. *See, e.g., Halleman v. Halleman,* No. 02–11–00238–CV, 2011 WL 5247882, at *3–5 (Tex. App.–Fort Worth Nov. 3, 2011, no pet.) (mem.op.); *Marcus v. Smith,* 313 S.W.3d 408, 416 (Tex.App.–Houston [1st Dist.] 2009, no pet.); *In re Garza,* 153 S.W.3d 97, 100–01 (Tex.App.–San Antonio 2004, orig. proceeding); *In re K.M.,* No. 2–04–044–CV, 2004 WL 2569384, at *8 (Tex.App.–Fort Worth Nov. 12, 2004, pet. denied) (per curiam) (mem.op.); *In re Gonzalez,* 993 S.W.2d 147, 162 (Tex.App.–San Antonio 1999, no pet.).

---

2. Subsection (a) also authorizes the trial court to appoint temporary conservators for the child and provide for possession of the child; require the temporary support of the child by a party; restrain a party from molesting or disturbing the peace of the child or another party; prohibit a person from removing the child beyond a geographical area identified by the court; or suspend the operation of the order or judgment that is being appealed. TEX. FAM.CODE ANN. § 109.001(a).

3. Remittiturs were required if, for example, there was no oral argument in the court of appeals, Father did not file a petition for review in the supreme court, or the supreme court did not request briefing on the merits.

4. We address this issue without regard for whether section 109.001 governing temporary orders pending appeal is the appropriate vehicle by which to ask for conditional attorney's fees for an appeal. Mother moved for conditional appellate attorney's fees as a temporary order pending appeal, and Father does not argue that section 109.001 does not apply.

We respectfully disagree that subsection (c) deprives us of jurisdiction to review a section 109.001 order in conjunction with the pending appeal from the final judgment. Those courts concluding otherwise did not distinguish between an accelerated interlocutory appeal and an appeal from a final judgment. *See, e.g., Halleman*, 2011 WL 5247882, at *3–5; *Marcus*, 313 S.W.3d at 416; *In re Garza*, 153 S.W.3d at 100–01; *In re K.M.*, 2004 WL 2569384, at *8; *In re Gonzalez*, 993 S.W.2d at 162.

Subsection (c) does not prohibit all appeals; it prohibits only interlocutory appeals from temporary orders. Tex. Fam. Code Ann. § 109.001(c). We construe this to mean only that an accelerated appeal of a temporary order, separate from the appeal from the final judgment, is statutorily prohibited. *See* Tex. Fam.Code Ann. § 109.001(c); *In re Merriam*, 228 S.W.3d 413, 415 (Tex.App.–Beaumont 2007, orig. proceeding) (per curiam) (construing similar statute and disagreeing with other courts' interpretation that review in the pending appeal prohibited); *see also In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex.2006) (in construing statute, look to statute's plain language to determine legislative intent). Subsection (b) supports this construction because it authorizes the appellate court to supersede the trial court's order. Tex. Fam. Code Ann. § 109.001(b); *see In re Merriam*, 228 S.W.3d at 415–16. In construing a similarly worded statute, the court in *In re Merriam* stated,

> Authorizing the appellate court to supersede enforcement of the order suggests the appellate court may do so to allow review of the order by the appellate court in the pending appeal. We see nothing in the statute that deprives the appellate court of jurisdiction to consider the issue with the merits of the pending appeal from the final judgment.

228 S.W.3d at 416 (construing family code section 6.709 and discussing other courts' construction of section 109.001). We conclude that the court's analysis in *In re Merriam* applies equally to section 109.001; we see nothing in the statute that prohibits our review of the merits of a section 109.001 order in conjunction with the appeal from the final judgment.

## Is Mandamus Relief Appropriate in this Case?

■ Having determined that we have jurisdiction to review a section 109.001 order in the pending appeal, we next determine whether mandamus is the appropriate vehicle to review the Order in this case. We conclude that it is not.

■ Mandamus is an extraordinary remedy reserved for those exceptional cases in which the trial court clearly abused its discretion and there is no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–38 (Tex.2004) (orig.proceeding). We recognize that relief by mandamus is often required in family-law cases to protect the rights of children and parents. *See In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d at 613. But this does not relieve the relator from satisfying its heavy burden of proving both prongs required for mandamus relief. *See Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987) (per curiam) (orig.proceeding) ("Mandamus relief is available when under the circumstances of the case the facts and law permit the trial court to make but one decision—and the trial court has refused to make that decision—and remedy by appeal to correct the ruling is inadequate."); *see also Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305–06 (Tex.1994) (reaffirming that lack of adequate remedy on appeal required for mandamus relief). Today, we focus on whether Father proved

the second prong: no adequate remedy on appeal.

The determination whether an appellate remedy is adequate "is not an abstract or formulaic one; it is practical and prudential"; and it "depends heavily on the circumstances presented and is better guided by general principles than by simple rules." *In re Prudential,* 148 S.W.3d at 136, 137. Generally, an appellate remedy is inadequate if the issue "eludes answer by appeal" or a party is in danger of losing substantive or procedural rights. *Id.* at 136, 138.

Whether there is an adequate remedy on appeal is determined by the facts and circumstances of each case. *See, e.g., In re Tex. Dep't of Family & Protective Servs.,* 210 S.W.3d at 613–14; *Canadian Helicopters,* 876 S.W.2d at 305–06; *Proffer,* 734 S.W.2d at 673. If a remedy on appeal would be adequate, then mandamus relief is not appropriate because any alleged error in the trial court's order could be corrected on appeal. *See In re Prudential,* 148 S.W.3d at 136. This may involve reviewing the language of the order to determine whether it is truly temporary, or final and appealable. *See Brines v. McIlhaney,* 596 S.W.2d 519, 524 (Tex. 1980) (orig.proceeding) (construing order issued under predecessor statute as final order even though labeled temporary); *Qwest Commc'ns Corp. v. AT & T Corp.,* 24 S.W.3d 334, 336 (Tex.2000) (per curiam) (character and function of order determines whether temporary or final). If an order is final, it is reviewable on appeal. *See Brines,* 596 S.W.2d at 524.

The facts and circumstances of this case show that the award of appellate attorney's fees to Mother was conditioned on Father's unsuccessful appeal; the Order does not require Father to pay the attorney's fees unless the appeal is resolved in Mother's favor. As a result, if we were to conclude that the trial court abused its discretion by issuing the Order, we could correct the error on appeal before Father is required to pay anything. *Cf. In re Jafarzadeh,* No. 05–14–01576–CV, 2015 WL 72693, at *1–3 (Tex.App.–Dallas Jan. 2, 2015, orig. proceeding) (mem.op.) (mandamus review appropriate because order required immediate payment of award of attorney's fees pending appeal substantial enough to threaten continuation of litigation). Because the Order is conditional, we conclude that Father has an adequate remedy on appeal. And Father does not argue otherwise. In his petition for writ of mandamus, he states his "appeal is pending in this Court ..., so this mandamus proceeding can be carried and decided with that appeal."

Additionally, the Order disposed of Mother's claim for appellate attorney's fees and awarded her a judgment for those fees. The Order does not state it is temporary or contemplate further involvement of the trial court. *See Brines,* 596 S.W.2d at 524. Consequently, the Order purports to be a final, post-judgment order, which is appealable. *See* Tex. Fam.Code Ann. § 109.002(b); *Brines,* 596 S.W.2d at 524.

For all these reasons, we conclude that Father has an adequate remedy on appeal. We deny Father's petition for writ of mandamus.

## Did the Trial Court Abuse its Discretion?

Turning to the merits of Father's issue in this appeal, we conclude that the trial court did not abuse its discretion by issuing the Order.

## Applicable Law

Under the traditional, non-lodestar method of proving up the reasonableness of attorney's fees, "an attorney's tes-

timony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award." *In re A.B.P.*, 291 S.W.3d 91, 99 (Tex.App.–Dallas 2009, no pet.); *see also Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157 n. 7 (Tex.2012) (noting a previous decision in which it held that "even conclusory attorney's fee testimony was not objectionable, however, because 'the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee' ") (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex.2010)).

■■■■■■ A court may consider several factors in determining the amount of an award of attorney's fees, but a party does not need to present evidence of each of the factors to support the amount awarded. *In re A.B.P.*, 291 S.W.3d at 98 (citing factors). A trial court may also look at the entire record and consider the common knowledge of the participants as lawyers and judges. *In re C.H.C.*, No. 05–07–01289–CV, 2010 WL 22795, at *1 (Tex. App.–Dallas Jan. 6, 2010, no pet.) (mem. op.).

■■■■ Additionally, testimony from a party's attorney about fees will be taken as true as a matter of law if it " 'is not contradicted by any other witness and is clear, positive, direct, and free from contradiction.' " *In re A.B.P.*, 291 S.W.3d at 98 (quoting *Blockbuster, Inc. v. C–Span Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex. App.–Dallas 2008, pet. granted, judgm't vacated w.r.m.)). "This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so." *Id.*

## Standard of Review

■■■ A court may render an order requiring "payment of reasonable attorney's fees and expenses" if it is "necessary to preserve and protect the safety and welfare of the child during the pendency of the appeal[.]" TEX. FAM.CODE ANN. § 109.001(a)(5) (West 2014). A trial court has broad discretion to award reasonable attorney's fees in a suit affecting the parent–child relationship. *In re Jafarzadeh*, 2015 WL 72693, at *2–3; *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex.App.–Dallas 2007, no pet.). A trial court does not abuse its discretion when there is some evidence to support the award of attorney's fees. *In re M.A.N.M.*, 231 S.W.3d at 567.

## Discussion

Father argues that there is no evidence the fees Mother requested were reasonable, and, even if there was, Mother's attorney did not provide any basis for the fees, such as the services that would be required, the amount of time an appeal might take, or other details.

Mother's attorney testified that he had practiced family law exclusively since 1996 and was "familiar with the work done in family law cases including appeals." He said he was "familiar with the reasonable rates and the work that needs to be done." He said he was anticipating more costs for Mother because he expected Father "will continue to be litigious" and "make good on promises that he made" to cause Mother "to spend tens of thousands of dollars to get ... unnecessary [Mother] support." Mother's attorney then presented an exhibit that he said was "a summary of my testimony." Father said he had "[n]o objection to this exhibit." The exhibit stated:

## ANTICIPATED ATTORNEY'S FEES EXHIBIT

$2,500.00 File and prosecute the Motion for Temporary Orders Pending Appeal

$5,000.00 Prepare for attend [sic] a mediation pending appeal

$15,000.00 Review record, prepare and file an Appellee's Brief with the court of appeals

$2,500.00 File a Sur–Reply Brief with the court of appeals

$5,000.00 For oral argument before the court of appeals

$7,500.00 If there is a petition for review filed with the Texas Supreme Court and the supreme court requests a Response

$7,500.00 If the Texas Supreme Court asks for briefing on the merits

$7,500.00 If the Texas Supreme Court requests oral argument

Mother's attorney explained that the proposed order, which was based on this exhibit, awarded fees of $52,500, but required remittiturs of up to $50,000 for steps not taken by Father. The trial court asked questions about the remittiturs and total amount requested, and Mother's attorney answered them. Then the attorney passed himself as a witness.

Father argued that there was no evidence to support the basis for or the reasonableness of the fees listed in the exhibit, no discussion of the hourly rate, and no discussion of the amount of time required to complete the services listed in the exhibit. Mother's attorney responded that he had "testified as to my experience ... to my knowledge of reasonable rates and the work necessary to be done in this type case.... I submitted an exhibit. I opened myself up to cross-examination." Mother's attorney could not recall whether he testified about his hourly rate, but the trial court said it "clearly remember[ed] from the trial what his hourly rate is so that's not even necessary for me." The court said "that was the basis I believe that I ordered in the final order ... $7,500, although we all know much more was being ... requested than that." Father did not cross-examine Mother's attorney about his fees. The trial court granted the relief requested by Mother.

■ Father argues on appeal that Mother's attorney "just gave a number," which he contends "is nothing more than the *ipse dixit* conclusion of a credentialed witness." He argues that Mother's attorney provided no basis for the number, such as the work and amount of time required for an appeal. But specific testimony about the total number of hours required or the amount of hours required for each service is not necessary. *See In re A.B.P.*, 291 S.W.3d at 99; *Keith v. Keith*, 221 S.W.3d 156, 170 (Tex.App.–Houston [1st Dist.] 2006, no pet.) (failure to offer evidence of number of hours spent and reasonable hourly rate goes to weight of evidence and was "not of magnitude that would render it insufficient as a matter of law").

The record shows that Mother's attorney testified about his experience and familiarity with family law cases, including appeals, the work to be done, and the "reasonable rates" associated with those cases. He introduced an exhibit containing his opinion about the value of services required if Father pursued an appeal and a petition for review. Father's attorney had "no objection" to the exhibit and did not question the attorney about his fees. The record also shows that the trial court was familiar with the hourly rate charged by Mother's attorney. A reasonable inference from the evidence is that the trial court was aware of the proceedings in the

case and, as a family law court, was familiar with the rates and reasonableness of the attorney's fees. *See In re A.B.P.*, 291 S.W.3d at 99; *In re M.A.N.M.*, 231 S.W.3d at 567; *see also Garcia*, 319 S.W.3d at 641.

Father also argues that Mother's attorney's testimony cannot be taken as true as a matter of law because he contradicted himself about the value of the services required for appeals. Father argues that at trial Mother's attorney asked for $10,000 for an appeal to the intermediate court of appeals and another $10,000 if a petition for review was filed in the supreme court, but at the hearing on the motion for temporary orders he asked for higher amounts for those same appeals, and Father contends this makes the attorney's testimony contradictory. We disagree. The exhibit presented in the hearing did not necessarily contradict the attorney's testimony at trial; rather, it was a more detailed breakdown for each step in the appellate process. And Father did not attempt to disprove Mother's attorney's testimony about attorney's fees at the hearing even though he had the opportunity to do so. *See In re A.B.P.*, 291 S.W.3d at 98.

We conclude that the evidence constitutes more than a scintilla upon which the trial court could have exercised its discretion to award Mother conditional appellate attorney's fees, and Father has not shown that the trial court clearly abused its discretion by doing so. *See id.* at 99; *see also Garcia*, 319 S.W.3d at 641.

### CONCLUSION

We deny Father's petition for writ of mandamus and affirm the trial court's orders.