# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00865-CV

---

**Olivier Bizimana, Appellant**

**v.**

**Ayomide Adetutu Ogunsanya, Appellee**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 25-0436-F425, THE HONORABLE TERENCE M. DAVIS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Olivier Bizimana appeals from the district court's final order in a suit affecting the parent-child relationship (SAPCR), filed by appellee Ayomide Adetutu Ogunsanya. Both Bizimana and Ogunsanya represented themselves at the final hearing and are proceeding pro se on appeal. In six issues on appeal, Bizimana asserts that the district court committed various procedural errors (issues one and three), violated the parental presumption by giving greater parental rights to Ogunsanya (issue two), abused its discretion in setting the amount of child support (issue four), abused its discretion by requiring him to pay half of Ogunsanya's attorney's fees (issue five), and abused its discretion by ordering him to pay half of Luke's prenatal expenses as additional child support (issue six). We will affirm the district court's order.

## BACKGROUND

Bizimana and Ogunsanya are the separated parents of L.B. ("Luke"), born in January 2024.[1] They were never married. In 2025, Ogunsanya filed a petition in a suit affecting the parent-child relationship, seeking to be named joint managing conservator with the exclusive right to determine Luke's primary residence.

The case proceeded to a hearing on temporary orders. At this hearing, Bizimana represented himself and Ogunsanya was represented by counsel. They both testified, as did Ogunsanya's counsel regarding her attorney's fees. At the conclusion of the temporary-orders hearing, the district court appointed both parents as temporary joint managing conservators, appointed Ogunsanya as the parent with the exclusive right to designate the primary residence of the child, and determined that the parents were to "consult regarding any decisions as to medical, dental, surgical, psychological, psychiatric and educational decisions regarding the child," with Ogunsanya having the final say in the event of a dispute between the parents. Ogunsanya also had the right to enroll Luke in daycare. Regarding possession, the district court ordered a 50/50 temporary possession-and-access schedule "until requests for final orders are heard and ruled on." The district court further ordered Bizimana to pay $600 per month in child support,[2] $2,687.68 for one half of Luke's prenatal bills, and $3,000 for one-half of Ogunsanya's attorney's fees. The district court later issued temporary orders consistent with these rulings.

---

[1] For the child's privacy, we refer to him using an alias. *See* Tex. R. App. P. 9.9(a)(3).

[2] The district court stated that to determine this amount, it "calculated the amount of child support mom would pay, calculated the amount of child support dad would pay and then did a delta between the two and that results in $600."

Bizimana filed a motion to dissolve the temporary orders, alleging various reasons why he believed the orders to be improper. The district court never ruled on this motion.

The case proceeded to a final hearing before a different district court in October 2025.[3] At this hearing, both Bizimana and Ogunsanya represented themselves and testified in narrative form, with the district court asking each of them questions about the case. Ogunsanya testified that Bizimana had not paid the child support that he had been ordered to pay and that she had not received "any support" from Bizimana. She also had not "received any help at all for daycare" and had to pay for Luke's daycare from her emergency fund. Ogunsanya asked that Bizimana's child support obligation be increased "to include his half for day care moving forward." Ogunsanya testified that her annual income was approximately $150,000 but that she could not afford daycare at that time because she had a mortgage and a car note. She also asked that Bizimana be ordered to pay half of her attorney's fees.

Ogunsanya further requested that she be allowed to make most of the decisions for Luke because Bizimana did not "respect the Court or anything that the Court asks him to do, and I'm afraid that my son is seeing that example and may grow up thinking that that's okay, that it's okay to break the law." She also did not think that Luke was "very safe" with Bizimana because of an incident in which Bizimana and his mother had refused to let her and Luke come inside the house for a birthday party when it was freezing outside. Ogunsanya also testified that Bizimana had pushed her twice when they were living together and subjected her to emotional

---

[3] The district court's docket sheet reflects that the case was referred to the 480th District Court on the morning of the final hearing. The record does not reflect the reason for the referral.

abuse, although she did not elaborate on these incidents at the final hearing.[4] Ogunsanya further testified that Bizimana had twice "obstructed" her from giving Luke his MMR vaccine and had refused to help Ogunsanya pay for daycare. She added, "He's focused on fighting and conflict as opposed to our son's well-being and . . . show[ing] him a decent, normal life."

Bizimana testified that he complied with the temporary orders, although he acknowledged that "[t]here are things that I did not do exactly as they were" ordered, such as paying for Luke's prenatal expenses because he was contesting them. He also testified that he did not know how to "present his evidence" at the temporary-orders hearing and that as a result, the judge at that hearing was unable to consider his exhibits. Bizimana believed that he was a good father to Luke, recounting that he had "raised [Luke] ever since he was a baby because I taught him everything that he does . . . like walking, you know, talking, rolling and crawling, all those little things that, you know, parents do with their kids." Bizimana testified that his annual income was between $160,000 and $170,000.

Also at the final hearing, Ogunsanya's former counsel provided testimony regarding her attorney's fees. She testified that she had represented Ogunsanya from February 2025 through September 2025. During that time, she "filed petitions. We amended the petition. We had a temporary-order hearing setting, which got reset due to a request of Mr. Bizimana. I drafted the temporary orders from that. We had, I believe, 28 pleadings on orders in the case

---

[4] Ogunsanya provided additional testimony relating to these alleged incidents at the temporary-orders hearing. However, the record of that hearing was never offered or admitted into evidence at the final hearing. *See Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence."); *see also Davis v. State*, 293 S.W.3d 794, 797 (Tex. App.—Waco 2009, no pet.) ("A trial judge may not even judicially notice testimony that was given at a temporary hearing in a family law case at a subsequent hearing in the same cause without admitting the prior testimony into evidence.").

during the time I was on the case." Counsel reviewed motions and responded to communications in this case "[v]ery frequently. There was an exceptional amount of communication to the Court and motions." Counsel believed that Bizimana's repeated pro se filings and communications in the case "definitely increased the cost" of the legal services that she provided. Counsel "had 38.8 hours of time invested" in the case at the rate of $325 an hour, and her legal assistant "had 28.8 hours of time spent in the case" at the rate of $120 an hour. This amounted to attorney's fees of over $15,000. Counsel testified, "All the work performed by [the legal assistant] needed to be done by either her or me, and I believe all the work was necessary in the case. I billed at a rate that is typical of rates for attorneys in Williamson County." Counsel believed that it was reasonable for Bizimana to contribute to the fees because they "were higher because of [his] actions" and because he lacked the skills of an experienced attorney. Counsel added that Bizimana had not yet paid the $3,000 in attorney's fees or the $2,687.68 in prenatal care for Luke that the district court had ordered him to pay in its temporary orders.

On cross-examination, Bizimana asked counsel to describe "the factual basis for the reasonableness and the necessity of the fees." Counsel testified,

> [W]e were trying to get temporary orders, and we were preparing for this trial, ultimately, and we were attempting to get information from you to establish what child support should be paid, and you didn't provide that to us at all at the time I was still in the case.

> We were also attempting to have her reimbursed for hospital expenses. We would get an order—for example, the very first continuance, the order granting a continuance, there was an interim order for visitation. We got it, and then we had to argue with you that evening about what the judge had just said.

5

Counsel concluded that Ogunsanya had paid her over $8,000 in attorney's fees, but the remainder of her fees remained unpaid.

At the conclusion of the hearing, the district court admitted into evidence exhibits provided by both parties and took the matter under advisement. The next day, the district court issued its final order. In the order, the district court appointed both parents as joint managing conservators, with Ogunsanya having the exclusive right to decide Luke's residence and to make other decisions for Luke; adopted an expanded standard possession schedule, with exchanges of possession to occur at the Hutto Police Department; ordered Bizimana to pay guideline child support in the amount of $1,960 per month and additional child support for Luke's prenatal expenses in the amount of $2,687.68; and ordered Bizimana to pay half of Ogunsanya's attorney's fees in the amount of $7,500.

At Bizimana's request, the district court later issued the following findings of fact and conclusions of law:

### Findings of Fact

After careful consideration of the arguments, extensive testimony, documentary and electronic evidence admitted by the Court, the Court makes the following findings of fact:

1. Petitioner, AYOMIDE OGUNSANYA, and Respondent, OLIVIER BIZIMANA, are the parents of the child, [Luke].

2. The gross resources of Ayomide Ogunsanya are $150,000 per year.

3. The net resources of Olivier Bizimana are $160,000.00 per year.

*Findings of Fact & Conclusions of Law-Conservatorship*

4. The Court found that it was in the best interest of the child to appoint the parents Joint Managing Conservators with the Petitioner having the exclusive right to determine the primary residence of the child in Williamson County and the Petitioner to have the exclusive right to make the other parental decisions under 153.132 based on the evidence presented and Respondent's non-compliance with prior temporary order provisions. All other rights under TFC 153.073 and 153.074 were awarded to both parents.

*Findings of Fact & Conclusions of Law-Possession*

5. The Court found that it was in the best interest of the child to award an Expanded Standard Possession Schedule.

*Findings of Fact & Conclusions of Law-Child Support*

6. The Court found that it was in the best interest of the child to have the Respondent pay guideline child support based on his income and have a life insurance policy to cover child support. . . . The Court considered the retroactive child support request and started the child support as of August 1, 2025 considering the lowered child support paid during temporary orders and failures to comply with the temporary orders.

*Findings of Fact & Conclusions of Law-Attorney's Fees*

7. The Court found that the legal expenses were increased due to the father's conduct and ordered him to pay $7,500 in attorney's fees.

*Findings of Fact & Conclusions of Law-Prior Obligation and Prenatal Expenses*

8. The Court just continued the prior temporary orders requirements that had not been complied with or satisfied. The Court also found that the father owed 50% of the prenatal expenses in the amount of $2,687.68.

Bizimana filed a motion for new trial that the district court denied after a hearing. This appeal followed.

## STANDARD OF REVIEW

We review trial court decisions about conservatorship, possession and access, child support, attorney's fees, and related issues for an abuse of discretion. *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Udall v. Minns*, 730 S.W.3d 704, 726 (Tex. App.—Austin 2026, pet. denied); *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.). "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

In family-law cases, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *See Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, pet. denied). Consequently, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 587. To determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry, analyzing whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *Id.* at 588.

Traditional standards for legal and factual sufficiency come into play with the first question. *Id.* When conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would

support it.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).  When conducting a factual-sufficiency review, we consider all the record evidence and set aside the trial court's order only if the evidence is so weak as to make the order clearly wrong and manifestly unjust.  *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).  We defer to the factfinder's implicit determinations of credibility and weight to be given to the evidence.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).  Because the trial court acts as the factfinder in a bench trial, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony."  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

The trial court does not abuse its discretion if it bases its decision on conflicting evidence or when some evidence of a probative or substantive character exists to support its decision.  *Zeifman*, 212 S.W.3d at 587.  However, a trial court has no discretion to incorrectly analyze or apply the law, and its failure to analyze or apply the law correctly is an abuse of discretion.  *See Iliff*, 339 S.W.3d at 78; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

## DISCUSSION

**Procedural issues**

In his first and third issues, Bizimana asserts that the district court committed various procedural errors.  In his first issue, Bizimana contends that the district court violated his due-process rights by not providing him with a "meaningful opportunity to present his evidence," by failing to review all the evidence that Bizimana presented, and by issuing its ruling "immediately after transfer [of the case from one court in Williamson County to another] without full record review."  In his third issue, Bizimana argues that the district court failed to hear his

9

pending motion to dissolve temporary orders, "entered judgment without meaningfully reviewing the record after the case was transferred," and disregarded admitted evidence.

None of these complaints have merit. "General principles of due process dictate that a litigant has a right to be heard and that the court must protect that right." *Striedel v. Striedel*, 15 S.W.3d 163, 166 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). However, trial courts are vested with broad discretion regarding the admission and presentation of evidence, *id.*, and to manage trial proceedings, *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001). Additionally, "a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Id.*

Here, the record reflects that Bizimana received a full evidentiary hearing, with the opportunity to argue his case, testify, cross-examine Ogunsanya and her former counsel, present documentary evidence, and object to Ogunsanya's evidence. Bizimana's complaints are focused on the fact that the district court issued its order the day after the final hearing and the day after the case was referred to it, which Bizimana argues was not enough time for it to consider all the admitted evidence.[5] However, there is nothing in the record to indicate that the district court failed to do so. The record reflects that the district court heard testimony from both parents and Ogunsanya's former counsel, admitted numerous exhibits from both parties, and questioned the parties directly and extensively about their testimony, their exhibits, and what they wanted the district court to do. That the district court issued its ruling the day after it received the referral and heard the case does not provide a basis for us to conclude that the district court disregarded Bizimana's evidence or denied Bizimana his due-process rights.

---

[5] As we have already noted, *see supra* n.4, the district court would not have been permitted to consider the evidence admitted at the temporary-orders hearing absent a proper request from a party to authenticate and admit the transcript into evidence. Neither party did so.

10

As for the district court not ruling on Bizimana's pending motion to dissolve temporary orders, any complaints regarding the temporary orders became moot once the district court issued its final order. *See In re J.J.R.S.*, 627 S.W.3d at 225-26; *In re E.R.C.*, 496 S.W.3d 270, 278-79 (Tex. App.—Texarkana 2016, pet. denied); *see also A.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00089-CV, 2023 WL 3956859, at *6 (Tex. App.—Austin June 13, 2023, orig. proceeding) (mem. op.) (explaining that final decree in SAPCR renders any complaints about temporary orders moot and thus not subject to review on appeal). Additionally, Bizimana failed to object to the district court not ruling on his motion, and thus he failed to preserve error, if any, in the court below. *See* Tex. R. App. 33.1(a)(1). We cannot conclude on this record that the district court violated Bizimana's due-process rights, failed to review the evidence that was admitted, or committed any procedural error that would entitle Bizimana to reversal of the order.

We overrule Bizimana's first and third issues.

**Parental presumption**

In his second issue, Bizimana asserts that the district court violated the parental presumption by removing his "joint decision-making authority" and "reduc[ing] possession despite undisputed evidence showing that Appellant had been an active and involved parent and that the parties had successfully maintained a 50/50 parenting schedule." According to Bizimana, the district court should have maintained the equal possession schedule contained within the temporary orders because that schedule was "working" and because there was no evidence presented that Bizimana had endangered Luke.

11

The Family Code provides that "[i]t is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." Tex. Fam. Code § 153.131(b). That is what occurred here. The district court named both Bizimana and Ogunsanya as joint managing conservators of Luke. Thus, the district court did not violate the parental presumption.

To the extent that Bizimana is complaining about the district court granting Ogunsanya the exclusive right to make certain decisions for Luke, we cannot conclude on this record that the district court abused its discretion. In rendering an order appointing joint managing conservators, a trial court is required to "designate the conservator who has the exclusive right to determine the primary residence of the child" and "allocate between the parents, independently, jointly, or exclusively, all of the remaining rights and duties of a parent." *Id.* § 153.134(b). "The trial court retains broad discretion in crafting the rights and duties of each conservator in effectuating the best interest of the child." *Swaab v. Swaab*, 282 S.W.3d 519, 532 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). In this case, considering the history of conflict between Bizimana and Ogunsanya, which Ogunsanya testified was initiated by Bizimana, and further considering Bizimana's failure to comply with the temporary orders, we cannot conclude that the district court abused its broad discretion in naming Ogunsanya as the joint managing conservator with exclusive rights to make certain decisions for Luke.

We similarly cannot conclude that the district court abused its discretion by ordering an expanded standard possession schedule. "Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." Tex. Fam. Code § 153.135. Although Bizimana argues that the 50/50 possession order was "working," the district court would not have abused its

discretion in finding that an expanded standard possession order would be in the best interest of Luke based on the evidence of conflict between the parents, summarized above. Additionally, contrary to Bizimana's contention, there is no requirement that a district court make a finding of endangerment before it may deviate from a 50/50 possession schedule. *Cf. In re S.C.B.*, 581 S.W.3d 434, 439 (Tex. App.—El Paso 2019, no pet.) (similarly holding that family code "does not require that a trial court make a predicate finding of endangerment before it deviates from the standard possession order").

We overrule Bizimana's second issue.

**Child Support**

In his fourth issue, Bizimana asserts that the district court abused its discretion in setting the amount of child support that Bizimana owed. According to Bizimana, the district court failed to consider that the parents had comparable incomes and had "historically shared possession of the child equally." Relatedly, in his sixth issue, Bizimana asserts that the district court erred by ordering him to pay prenatal expenses in the amount of $2,687.68 as additional child support. According to Bizimana, the total prenatal expenses owed were only $1,200, and he had already paid some of that amount.

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Iliff*, 339 S.W.3d at 78 (citing *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex.1993)); *see also* Tex. Fam. Code §§ 154.121-.123. "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (per curiam) (citation omitted).

Bizimana failed to make that showing here. As an initial matter, he cites to no authority for his proposition that a trial court abuses its discretion by ordering one parent to pay child support to another if both parents have comparable income and shared equal possession of the child in the past. To the contrary, the Family Code expressly provides that "[t]he court may order either or both parents to support a child," Tex. Fam. Code § 154.001(a), and "[t]he appointment of joint managing conservators does not impair or limit the authority of the court to order a joint managing conservator to pay child support to another joint managing conservator," *id.* § 153.138. The court has discretion to consider the circumstances of both parents when setting the amount of child support. *See* Tex. Fam. Code §§ 154.001, .123(b)(17).

In this case, the district court ordered Bizimana to pay child support in the amount of $1,960 per month, which Bizimana does not dispute is consistent with the amount of guideline support recommended by the Texas Family Code. *See* Tex. Fam. Code § 154.125; *see also Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.) (explaining how guideline support is calculated). Such an amount is presumed to be reasonable and in the best interest of the child. *See* Tex. Fam. Code § 154.122(a). Bizimana provided no evidence in the court below to overcome that presumption, and in the absence of such evidence, we cannot conclude that the district court abused its discretion. Although it is true that his and Ogunsanya's incomes are similar, they are not equal. The district court found that Bizimana's net resources were $160,000 per year, while it found that Ogunsanya's *gross* resources were $150,000 per year. Thus, Ogunsanya's net resources are less than that amount, and the district court would not have abused its discretion in taking that into account when setting the amount of child support. Additionally, Ogunsanya testified that she could not afford daycare, and the district court would not have abused its discretion in crediting this testimony, finding that

14

attending daycare would be in Luke's best interest, and in setting the amount of child support in an amount that would assist Ogunsanya in paying for daycare. *See Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) ("The function of child support is to help a custodial parent maintain an adequate standard of living for the child."). Also, Ogunsanya testified that Bizimana had not paid the $600 per month in child support that the district court had temporarily ordered, and the district court would not have abused its discretion in finding that Ogunsanya was owed additional support. Further, although the parties had shared equal possession of Luke under the temporary orders, the final order provided that Ogunsanya would have greater possession of Luke moving forward, and the district court would not have abused its discretion in finding that as a result, Bizimana should pay a higher amount of child support moving forward.

As for the district court's order that Bizimana pay $2,687.68 for Luke's hospital bills as additional child support, there is some evidence of a substantive and probative character to support this amount. Ogunsaya's former counsel testified at the final hearing that this amount represented "one-half of the hospital bills incurred for [Luke's] birth." Additionally, the district court admitted into evidence payment receipts showing that Ogunsaya had paid $3,061.30 for room and board and inpatient services at St David's North Austin Medical Center during Luke's birth and had made additional payments to the hospital and other health-care providers for prenatal services in the amounts of $107.70 and $902.23. Although Bizimana disputed the total amount owed and testified that he had already paid for some of his portion of Luke's prenatal expenses, Ogunsaya testified that she had paid for Luke's hospital bills "alone." The district court was entitled to credit Ogunsanya's evidence and disbelieve Bizimana's evidence. We cannot conclude on this record that the district court abused its discretion in awarding this additional amount to Ogunsanya.

15

We overrule Bizimana's fourth and sixth issues.

**Attorney's Fees**

In his fifth issue, Bizimana asserts that the district court abused its discretion in its award of attorney's fees. According to Bizimana, the record does not contain evidence of all the relevant factors that the district court could consider in its decision. Additionally, counsel testified that her attorney's fees were higher because Bizimana chose to represent himself, and in Bizimana's view, this is an improper basis for the fee award.

An attorney's fees award in a suit affecting the parent-child relationship lies within the sound discretion of the trial court. *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) (citing Tex. Fam. Code § 106.002). In determining the reasonableness of a fee award, the district court should consider factors such as the time spent by the attorney on the case, the nature of the attorney's preparation, and the complexity of the case. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *In re S.V.*, 599 S.W.3d 25, 35 (Tex. App.—Dallas 2017, pet. denied). A party is not required to present evidence of every relevant factor, and a trial court may consider the entire record in reaching its decision. *In re Moore*, 511 S.W.3d 278, 288 (Tex. App.—Dallas 2016, no pet.). An attorney's testimony on fees will be taken as true as a matter of law if it is clear, positive, direct, free from internal contradiction, and unchallenged by another witness. *Id*.

In this case, counsel testified that she had represented Ogunsanya from February 2025 through September 2025 and summarized the work that she and her legal assistant had done in the case. In total, counsel "had 38.8 hours of time invested" in the case at the rate of $325 an hour, and her legal assistant "had 28.8 hours of time spent in the case" at the rate of

16

$120 an hour. This amounted to attorney's fees of over $15,000. Counsel explained that Bizimana's repeated pro se filings and communications in the case "definitely increased the cost" of the legal services that she provided. She added, "All the work performed by [the legal assistant] needed to be done by either her or me, and I believe all the work was necessary in the case. I billed at a rate that is typical of rates for attorneys in Williamson County." Counsel believed that it was reasonable for Bizimana to contribute to the fees because they "were higher because of [his] actions" and because he lacked the skills of an experienced attorney. A copy of counsel's itemized bill, showing the particular legal tasks that she and her legal assistant had completed during the case, was admitted into evidence.

On this record, we cannot conclude that the district court abused its discretion in ordering Bizimana to pay $7,500 in attorney's fees. Counsel provided extensive testimony regarding her fees, and this testimony included a discussion of such factors as the time and labor required, the skill required to perform the legal services properly, the rate that was typical in Williamson County, and the length of time in which she represented Ogunsanya. This is sufficient to support the district court's fee award. As for Bizimana's contention that it was improper for the district court to consider the difficulties that counsel encountered as a result of Bizimana representing himself pro se, we are aware of no authority holding that this is an impermissible factor to consider. The district court would not have abused its discretion in finding that Bizimana's pro se representation increased the difficulty of the case and in taking that factor into account in its order that Bizimana pay half of Ogunsanya's attorney's fees.

We overrule Bizimana's fifth issue.

17

**CONCLUSION**

We affirm the district court's order.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Ellis

Affirmed

Filed:   May 28, 2026